Hunckel *vs.* Voneiff.

KATHERINE HUNCKEL, and OTTO HUNCKEL, her husband *vs.* LOUISA VONEIFF, and her husband, CHARLES J. VONEIFF.

*Libel and Slander— Privilege of Witness.*

No action for slander will lie against a witness for what he says or writes in giving evidence in a judicial proceeding, notwithstanding it may be malicious and false. The privilege that exempts a witness from such action is absolute.

Hunckel vs. Voneiff.

A witness being examined in an equity cause, in reply to a question by which it was attempted to fix a certain date, said: "Not knowing that a mistress or woman of Mr. Plitt would step in to claim the lawful wife's property, I did not keep an account of the date that way. If I would have, I would have noticed the date, and all those little particular incidences, to save Mrs. Plitt from much heartache and trouble and cause of her death." HELD:

That this answer was not outside of the privilege of a witness, and an action of slander was not maintainable therefor.

A witness is absolutely protected as to every thing said by him having relation or reference to the subject-matter of inquiry before the Court; but if he takes advantage of his position as a witness to assail wantonly the character of another, and to utter maliciously what he knows to be false in regard to a matter that has no relation or reference to the matter of inquiry, he is liable in an action of slander. Per ROBINSON, J.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, BRYAN, and McSHERRY, J.

*William S. Bryan, Jr.*, for the appellants.

From motives of public policy—because it is deemed for the general good that witnesses in a Court of justice should feel at perfect liberty to speak out freely, without fear, these declarations on the stand have always been held privileged communications. The only question is whether this privilege is absolute and unqualified, and gives the witness license to utter any calumny he may see fit, or if, as in all other cases of exemption from suit, the privilege only extends so far as the public welfare demands. In many English cases *dicta* can be found to the effect that the privilege is absolute, but so far as we have been able to ascertain, there is no

Hunckel *vs.* Vonciff.

case in which the facts show that the Court decided that a witness could not be sued who took advantage of his position to give publicity to a slander known by him to be false, having no connection with the case, and not believed by him to be responsive to any question asked, but uttered from pure malevolence and ill-will.

The rule is thus stated in *Odgers on Libel and Slander*, 191: "A witness in the box is absolutely privileged in answering all the questions asked him by the counsel on either side; and even if he volunteers an observation, (a practice much to be discouraged,) still, if it has reference to the matter in issue, or fairly arises out of any question asked him by counsel, though only going to his credit, such observation will also be privileged. But a remark made by a witness in the box, wholly irrelevant to the matter of enquiry, uncalled for by any question of counsel, and introduced by the witness maliciously for his own purposes, would not be privileged, and would also probably be a contempt of Court."

In note *b* to same page, the author says that the American doctrine is not so broad. What the witness says must be believed by him to be pertinent. To support this he cites a large number of respectable authorities.

The authorities in this country seem unanimously to decide that there is a limit to the immunity of a witness from suit.

In the case of *White vs. Carroll*, 42 *N. Y.*, 161, the Court instructed the jury "that if they found that the defendant believed his answers were pertinent and relevant to the question at issue when the words were uttered, their verdict should be for the defendant; if, on the other hand, they found that the defendant was actuated by malice or knew that the words were not relevant, and availed himself of the opportunity to

defame the plaintiff, the position of witness did not protect him." The instruction was affirmed by the Court of Appeals. Judge SUTHERLAND in delivering the opinion said it was "a question of conduct, of motive, of good faith and honest purpose, or of bad faith and malicious purpose."

In those States, where the question has arisen, it has been decided, that if a witness takes advantage of his position to heap abuse and calumny on a person he may dislike, his being on the witness stand will not protect him.

In *Barnes vs. McCrate,* 32 *Maine,* 446, the Court said: "There *can be no question* that if a witness taking advantage of his position, and departing from what rightfully pertains to the case, should voluntarily slander one of the parties, he would be liable."

In *Lea vs. White,* 4 *Sneed,* 111, after stating that the privilege was absolute where there was probable cause, the Court goes on to say that "probable cause" means "pertinency of the matter to the occasion;" and further says that although the matter may not be *strictly* relevant, it is privileged if it may fairly be supposed by them to be so. The case of *Shodden vs. McElwee,* 2 *Pickle,* 146, (*Tenn.,*) also reported in 5 *S. W. Rep.,* 602, is, it is submitted, completely analogous to the case at bar.

In the case of *Morgan vs. Booth,* 13 *Bush,* 482, C. J. LINDSAY says: "A party to a judicial proceeding may, by himself or counsel, write or say anything of, and concerning the case, or of a witness who testifies in the case, that is pertinent and material to the matter in controversy, and he cannot be held to answer for scandalous words, *unless* under the pretence of pleading his cause, he designedly wanders from the point in question, and maliciously heaps slander upon the party whose conduct or evidence is under consideration."

Hunckel *vs.* Voneiff.

Chief Justice RUFFIN, in delivering the opinion of the Court in *Briggs vs. Byrd*, 12 *Iredell, Law*, 380, an action for words spoken, said: "A person is not answerable for anything he says in honestly preferring a complaint before a justice of the peace; and *prima facie* every application is to be deemed honest, and to have been preferred upon good motives, until the contrary is shown, because it is a duty to bring offenders to justice. * * * It is always open, however, to the opposite side to prove malice, either by express evidence, or by circumstances attending the accusation, or by others that are collateral; as for example that the accuser had a particular grudge against the accused, and knew the accusation to be unfounded. It is, therefore, the question in all such cases, whether the party acted *bona fide* in making the complaint, or from a wicked and malicious mind." See *Lawson vs. Hicks*, 38 *Alabama*, 279; *Marshall vs. Gunter*, 6 *Richardson*, (*S. C.*,) 419.

In *Mower vs. Watson*, 11 *Vermont*, 537, it is said, "the party in order to maintain an action of slander for words so spoken, must show that they were not pertinent to the matter in progress at that time, and were spoken with a view to defame the plaintiff."

In the case of *Hoar vs. Wood*, 3 *Met.*, 193, Chief Justice SHAW, after recognizing the propriety of the general rule extending protection to what is said in judicial proceedings, adds: "Still this privilege must be restrained within some limits, and we consider that limit to be this: that a party or counsel shall not avail himself of his situation to gratify private malice by uttering slanderous expressions, either against a party, witness or third person, which have no relation to the cause or subject-matter of the inquiry." This is the established law of Massachusetts. *Rice vs. Coolidge*, 121 *Mass.*, 395; *McLaughlin vs. Cowley*, 127 *Mass.*, 319; *York vs. Pease*, 2 *Gray*, 282. See to the same effect

*Hill vs. Miles*, 9 *N. Hamp.*, 1; *Harper vs. Perry*, 28 *Iowa*, 56; *White vs. Carroll*, 42 *N. Y.*, 161; *Marsh vs. Ellsworth*, 50 *N. Y.*, 309; *Wyatt vs. Buell*, 47 *Cal.*, 624; *Calkins vs. Sumner*, 33 *Wisconsin*, 193; *Lanning vs. Christys*, 30 *Ohio State*, 115; *Liles vs. Gaster*, 42 *Ohio State*, 631; *Whitney vs. Allen*, 62 *Illinois*, 472, and *Johnson vs. Brown*, 3 *West Va.*, 91.

In *Kendillon vs. Maltby*, 1 *Car. & Marsh.*, 408, Lord DENMAN said: "I have no doubt in my mind that a magistrate, *be he the highest Judge in the land*, is answerable in damages for slanderous language, either not relevant to the cause before him, or uttered after the cause is at an end; but for words uttered in the course of his duty, no magistrate is answerable, either civilly or criminally, unless express malice and the absence of reasonable or probable cause be established."

This Court on three several occasions has decided that whilst common sense and public policy require that a Judge or other judicial officer shall not be vexed with suits on account of official acts properly performed, or on account of an honest mistake of judgment, the immunity does not extend to acts wantonly, corruptly or maliciously done. *Knell vs. Briscoe*, 49 *Md.*, 417; *Friend vs. Hamill*, 34 *Md.*, 304; *Bernard vs. Hoffman*, 18 *Md.*, 479.

The rule contended for by the appellant, gives all the protection needed by any honest though timid witness, and at the same time comes nearer the equitable doctrine of providing a remedy for every wrong. Our contention is: If a witness makes a statement which is responsive to a question, or which the Court can see, may fairly have been supposed by him to be so responsive, or which is relevant to the matter in controversy, or for which there was any proper excuse, as if it tended to sustain the credibility of the witness or explain why he did not remember the matters about which he was

questioned, the statement is absolutely privileged; but if stated without excuse or justification and with express malice and ill-will towards the person calumniated, the witness is liable to an action. If this is not so, then there is no redress, civil or criminal, for such a wrong. For, to make a false oath perjury, it must be *material* to the matter in controversy. (*Rex vs. Aylett*, 1 *Term Report*, 69; 4 *Blackstone*, 137; *Desty on Criminal Law*, sec. 75*h; Harris' Criminal Law*, 72.) And the oath here made was utterly *immaterial*.

*Edward Higgins*, for the appellees.

Witnesses, under the English rule, are absolutely exempted from liability to an action for defamatory words published in the course of judicial proceedings, whether the words be pertinent to the case or not. *Damport vs. Sympson*, *Cro. Eliz.*, 520; *Ayres vs. Sedgwicke*, *Cro. Jac.*, 601; *Dawkins vs. Rokeby*, *L. R.*, 8 *Q. B.*, 255; *Seaman vs. Netherclift*, *L. R.*, 1 *C. P. Div.*, 540; *Mackay vs. Ford*, 5 *Hurls. & N.*, 792; *Revis vs. Smith*, 18 *Com. Bench*, 126, (86 *Eng. Com. Law.*)

In *Henderson vs. Broomhead*, 4 *Hurls. & Nor.*, 570, COMPTON, J., says: "No action will lie for words spoken in the course of any judicial proceeding. In spite of all that can be said against it, we find the rule acted upon from the earliest times. The mischief would be immense if the person aggrieved, instead of preferring an indictment for perjury could turn his complaint into a civil action. By universal assent it appears that in this country, no such action will lie. The rule is inflexible that no action will lie for words spoken or written in the course of evidence."

A witness is "absolutely privileged" from civil actions. It is "the common law" and a "fixed principle." *Munster vs. Lamb*, *L. R.*, 11 *Q. B. Div.*, 588; *Townshend on Libel and Slander*, sec. 223.

Hunckel *vs.* Voneiff.

Among the American authorities for "absolute privilege" of witnesses from civil suits are: *Dunlap vs. Glidden,* 31 *Maine,* 439; *Grove vs. Braddenburg,* 7 *Blackf.,* (*Ind.,*) 234; *Bostwick vs. Lewis,* 2 *Day,* 447; *Peck vs. Woodbridge,* 3 *Day,* 30; *Osborn vs. Forshee,* 22 *Mich.,* 209; *Bacon vs; Michigan Cent. R. R. Co.,* 9 *West. Rep.,* 711; 7 *Wait on Act. and Def.,* 438; *Verner vs. Verner,* 64 *Miss. Rep.,* 324; *American cases in the note to Henderson vs. Broomhead,* 4 *Hurls. & Nor.,* 580; *The American note to Munster vs. Lamb,* 23 *Am. Law Reg.* (1884,) 25; *Smith vs. Lewis,* 3 *Johns.,* 169; *Cunningham vs. Brown,* 18 *Vt.,* 123.

In Maryland, witnesses appear to be classed with Judges and others as "absolutely privileged" from liability to civil actions for defamatory words in the course of judicial proceedings. *McBee vs. Fulton,* 47 *Md.,* 417; *Maurice vs. Worden,* 54 *Md,,* 253; 1 *Poe on Plead. & Prac.,* secs. 189, 517.

The long line of decisions in England, coming down through several centuries, giving a witness absolute immunity from a civil action for testimony given in judicial proceedings, and adopted by a number of our States, is based upon sound public policy, attested by the experience of enlightened and progressive people, has contributed to the administration of justice and the cause of good government.

MILLER, J., delivered the opinion of the Court.

This is an action of libel or slander against a witness in an equity cause, whose testimony was written down by the examiner, returned to the Court and read at the hearing before the Judge. The alleged libelous, or slanderous statements are contained in the testimony thus taken. There was a demurrer to each of the two counts in the declaration, which the Court sustained and, thereupon, gave judgment for the defendants. From that judgment this appeal is taken.

Hunckel *vs.* Voneiff.

In the able arguments of counsel the whole field of the law on the question of privilege has been explored, and we believe all the decisions, as well as the opinions and *dicta* of eminent Judges have been cited and pressed upon our attention. It would be a tedious task to review them in detail, and a hopeless one to attempt to reconcile them. The question is. a new one in this State. No precedent for such an action has been found in our reports or judicial records, and we believe this is the first attempt to bring one since a Court of justice was first established in the Colony of Maryland, a period of more than two centuries. This fact while it may not be conclusive against the right to maintain the action, certainly leaves us free to follow and adopt those authorities which state the law in accordance with what, in our judgment, the administration of justice and a sound public policy demand.

The case now before us is not that of an *advocate* but of a *witness*, and in our opinion it is of the greatest importance to the administration of justice that witnesses should go upon the stand with their minds absolutely free from apprehension that they may subject themselves to an action of slander for what they may say while giving their testimony. Mr. *Townshend* in his book on *Slander and Libel*, well says: "The due administration of justice requires that a witness should speak according to his belief, the truth, the whole truth and nothing but the truth, without regard to the consequences; and he should be encouraged to do this by the consciousness that, except for any wilfully false statement, which is perjury, no matter that his testimony may, in fact, be untrue, or that loss to another ensues by reason of his testimony, no action for slander can be maintained against him. It is not simply a matter between individuals; it concerns the administration of justice. The witness speaks in the hearing

and under the control of the Court, is compelled to speak, with no right to decide what is immaterial; and he should not be subject to the possibility of an action for his words." *Townshend on Slander and Libel, sec.* 223.

But there is more substantial authority for the absolute character of the privilege. In the standard work of *Starkie on Slander* it is laid down as the result of the English decisions that "witnesses, like jurors appear in Court in obedience to the authority of the law, and therefore may be considered, as well as jurors, to be acting in the discharge of a public duty; and though convenience requires that they should be liable to a prosecution for perjury committed in the course of their evidence, or for conspiracy in case of a combination of two or more to give false evidence, *they are not responsible in a civil action for any reflections thrown out in delivering their testimony.*" 1 *Starkie on Slander,* 242. This statement of the law has been frequently quoted with approval by the English Courts, and in some instances by Courts and text-writers in this country. *Terry vs. Fellows,* 21 *La. Ann. Rep.,* 275. In support of the absolute character of the privilege a long list of English decisions, ancient and modern, has been cited. Without referring to the earlier ones we mention some of those decided in more recent times, which have special reference to the case of parties and witnesses. *Revis vs. Smith,* 86 *Eng. C. L. Rep.,* 126; *Henderson vs. Broomhead,* 4 *H. & N.,* 568; *Kennedy vs. Hilliard,* 10 *Irish C. L. Rep.,* 195; *Dawkins vs. Rokeby,* 4 *Fost. & Fin.,* 806; *Dawkins vs. Rokeby, Law Rep.,* 8 *Queen's Bench,* 255, and same case on appeal in the House of Lords, *Law Rep.* 7 *H. L.,* 744.

In these cases WILLES, COLERIDGE, C. J., COCKBURN, C. J., BLACKBURN, KELLY, C. B., CRESWELL, Lord CAIRNS, and other eminent jurists have again and again expressed

Hunckel *vs.* Voneiff.

the opinion that the privilege of a witness should be absolute, have pointed out the great benefit of such privilege to the administration of justice, and have deprecated in strong terms the evil consequences they thought would ensue if witnesses were placed under any intimidation, or the fear of being involved in litigation by reason of what they might say when under examination. In *Dawkins vs. Rokeby*, the Judges were called in and gave unanimously an answer to the question put to them by the House of Lords, in which they say: "A long series of decisions has settled that no action will lie against a witness for what he says or writes in giving evidence before a Court of justice. This does not proceed on the ground that the occasion rebuts the *prima facie* presumption that words disparaging to another are maliciously spoken or written. If that were all, evidence of express malice would remove this ground. But the principle we apprehend is, that public policy requires that witnesses should give their testimony free from any fear of being harassed by an action on an allegation, whether true or false, that they acted from malice. The authorities as regards witnesses in the ordinary Courts of justice are numerous and uniform.". After this decision the case of *Seaman vs. Netherclift* arose, which was tried before COLERIDGE, C. J., at *nisi prius* and afterwards decided by him and BRETT, J., in *Law Rep.*, 1 *C. P. Div.*, 540, and subsequently by the Court of Appeal in *Law Rep.*, 2 *C. P. Div.*, 53. The Judges who heard the case on appeal were COCKBURN, C. J., BRAMWELL, J. A., and AMPHLETT, J. A., and they disposed of it at once. COCKBURN, C. J., said: "If there is any thing as to which the authority is overwhelming it is that a witness is privileged to the extent of what he says *in course of his examination*. Neither is that privilege affected by the relevancy or irrelevancy of what he says; for then he would be

obliged to judge of what is relevant or irrelevant, and questions might be, and are, constantly asked which are not strictly relevant to the issue.    But that, beyond all question, this unqualified privilege extends to a witness is established by a long series of cases, the last of which is *Dawkins vs. Lord Rokeby*, after which to contend to the contrary is hopeless. It was there expressly decided that the evidence of a witness with reference to the inquiry'' (the inquiry referred to being a military Court of inquiry instituted to investigate the conduct of an officer) "is privileged notwithstanding it may be malicious; and to ask us to decide otherwise is to ask what is beyond our power.    But I agree that if in this case beyond being spoken maliciously the words had not been spoken in the character of a witness *or not while he was giving evidence in the case,* the result might have been different.. For I am very far from desiring to be considered as laying down as law that what a witness states altogether out of the character and sphere of a witness, or what he may say *dehors* the matter in hand, is necessarily protected.    I quite agree that what he says before he enters or after he has left the witness-box is not privileged, which was the question in the case (*Trotman vs. Dunn,* 4 *Camp.,* 211,) before Lord ELLENBOROUGH.    Or if a man when in the witness-box were to take advantage of his position to utter something having no reference to the cause or matter of inquiry in order to assail the character of another, as if he were asked :    Were you at York on a certain day ? and he were to answer: Yes, and A. B. picked my pocket there; it certainly might well be said in such a .case that the statement was altogether *dehors the character of witness,* and not within the privilege.'' So in speaking upon the same subject BRAMWELL, J. A., says :    "Suppose while the witness is in the box, a man were to come in at the door, and the witness were to ex-

Hunckel *vs.* Voneiff.

claim, 'that man picked my pocket.' I can hardly think that would be privileged. I can scarcely think a witness would be protected for anything he may say in the witness-box wantonly and without reference to the inquiry. I do not say he would not be protected. It might be held that it was better that everything a witness said should be protected than that witnesses should be under the impression that what they said in the witness-box might subject them to an action. I certainly should pause before I affirmed so extreme a proposition, but without affirming that, I think the words 'having reference to the inquiry' ought to have a very wide and comprehensive application, and ought not to be limited to statements for which, if not true, a witness might be indicted for perjury, or the exclusion of which by the Judge would give ground for a new trial; but ought to extend to that which a witness might naturally and reasonably say when giving evidence with reference to the inquiry as to which he had been called as a witness." AMPHLETT, J. A., on the same subject says: "How it would have been if this statement had been *volunteered* by the defendant, without it being necessary or in any way arising from questions he had been asked, we need not express any opinion. In such a case it may be that the words would not have been spoken in his *office of a witness*. I must by no means be taken as expressing an opinion that in such a case the witness would not be protected. I can see many reasons why a witness should be absolutely protected for anything he said in the witness-box. If he did voluntarily make a scandalous attack while giving evidence he would be guilty of a gross contempt of Court, and might be committed to prison by the presiding Judge; or if he were before an inferior tribunal, and he persevered in his scandalous statements, he might be liable to an indictment for obstructing the course of justice." Much also was

said as to the privilege of a witness in the still more recent case of *Munster vs. Lamb,* in the Court of Appeal (*Law Rep.,* 11 *Q. B. Div.,* 588,) and we feel ourselves at liberty to adopt, if we choose, what was said in that case on that subject. The Judges, (BRETT and FRY) there again affirmed the absolute character of this privilege in the broadest terms. "Why should," says FRY, L. J., "a witness be able to avail himself of his position in the box and to make without fear of civil consequences a false statement, which in many cases is perjured, and which is malicious and affects the character of another? The rule of law exists, not because the conduct of those persons ought not of itself to be actionable, but because if their conduct was actionable, actions would be brought against Judges and witnesses in cases in which they had not spoken with malice, in which they had not spoken with falsehood. It is not a desire to prevent actions from being brought in cases where they ought to be maintained that has led to the adoption of the present rule of law; but it is the fear that if the rule were otherwise numerous actions would be brought against persons who were merely discharging their duty. It must always be borne in mind that it is not intended to protect malicious and untruthful persons, but that it is intended to protect persons acting *bona fide,* who, under a different rule, would be liable, not perhaps to verdicts and judgments against them, but to the vexation of defending actions." And he refers to the fact that Courts of justice have control over all proceedings before them, and have ample powers to check improper conduct on the part of witnesses as well as of solicitors and counsel.

Such are the English decisions. As to authority on the same subject in this country, we have already referred to what has been said by Mr. *Townshend* in his book on *Slander and Libel,* and we have the authority

Hunckel *vs.* Voneiff.

of Judge COOLEY to the effect, that: "Among the cases which are so absolutely privileged on reasons of public policy, that no inquiry into motives is permitted in an action for slander or libel, is that of a witness giving evidence in the course of judicial proceedings. It is familiar law that no action will lie against him at the suit of a party aggrieved by his false testimony, even though malice be charged;" and for this a number of authorities from different States are cited. *Cooley on Const. Lim.*, 545. Again, Mr. *Waite* seems to adopt the English cases as laying down the true rule. 7 *Waite's Actions and Defences*, 438. A different view as to the extent of the privilege has been taken by the Courts of many of the States, and it may be conceded that the weight of authority in this country is in favor of a much greater restriction upon the privilege than is sanctioned by the English decisions. But we are not controlled by any decision of our own Courts, and are at liberty to settle the law for this State according to our best judgment. After a most careful consideration of the subject, we are convinced that the *privilege of a witness* should be as absolute as it has been decided to be by the English authorities we have cited, and we accordingly adopt the law on this subject as they have laid it down.

It remains to apply this law to the case before us. The declaration does not state definitely what the controversy or matter of inquiry in the equity case of *Manning vs. Voneiff* actually was. Enough is stated, however, to warrant the inference that the female plaintiff was a party to that suit, or was preferring a claim in some capacity to the estate, or some part of it, of a Mr. Plitt, deceased, and that the witness, or her husband, was resisting that claim. The defendant was examined as a witness in that case, and so far as her testimony is set out in the declaration, it appears she

was first asked if she remembered quite distinctly the day on which her husband told her he was copying certain deeds at Mr. Plitt's request? To this she replied that she saw her husband copying some papers; that he had a file of papers copying them, and she being inquisitive, asked him what he was writing, and he said he was copying some deeds Mr. Plitt asked him to copy. She was then asked, was that the same day on which the magistrate came to see Mr. Plitt? To this she replied, "No. I don't think so." She was then asked, "Well, how many days about intervened?" To this she replied, "Not knowing that a mistress or woman of Mr. Plitt's would step in to claim the lawful wife's property, I did not keep an account of the date that way; if I would have, I would have noticed the date and all those little particular incidences to save Mrs. Plitt from much heartache and trouble, and cause of her death." This is the libel or slander complained of. Now, it is true she could have answered the question by simply saying she "did not remember." It is also true that the imputation thus cast upon the plaintiff was grossly slanderous. She may have made it from malice, knowing at the same time that it was false, and from the averments of the declaration which the demurrer admits we must so take it. Still it was the excuse she chose to give as to not remembering the date about which she had been pressed by this and two previous questions. It is, as we consider it, nothing more than a *reflection* cast upon a party to the controversy in answer to a question which could have been answered without making such reflection. The answer might have been expunged from the record, or the witness punished for making it, but it is quite impossible to say that she did not make it in her *character as witness*, or that it is at all like the examples put by the Judges

in *Seaman vs. Netherclift* as being entirely outside of the privilege.

*Judgment affirmed.*

(Decided 13th June, 1888.)

ROBINSON and BRYAN, J., dissented.

ROBINSON, J.—The absolute and unqualified privilege of a witness, as laid down in this case, is, in my opinion, a departure from the well settled law on the subject. I agree that a witness is absolutely protected as to everything said by him, having relation or reference to the subject-matter of inquiry before the Court. But if he takes advantage of his position as a witness to assail wantonly the character of another, and to utter maliciously what he knows to be false in regard to a matter that has no relation or reference to the matter of inquiry, he is, in my opinion, both on principle and authority, liable in an action of slander. I must, therefore, enter my dissent to the judgment in this case.

(Filed 13th June, 1888.)

A motion for a re-argument of the foregoing case before a Full Bench, was filed on the 1st of August, 1888, in behalf of the appellants. The Court overruled the motion, and at the same time delivered the following opinion:

MILLER, J.—A motion for a re-argument has been made in this case, and counsel have asked that it be had before a Full Court. The case itself, with two others bearing upon the same general subject, was most elaborately argued in the first instance, was most carefully considered, and the opinion heretofore filed expresses the deliberate judgment of four of the six Judges who heard it. The Constitution provides that four of

the Judges of the Court of Appeals shall constitute a *quorum*, that no case shall be decided without the concurrence of at least three, and that the Judge who heard the case below shall not participate in the decision. *Cons., Art.* 4, *sec.* 15. It will be thus seen that it is seldom practicable or possible to have a full Court for the hearing of a case; but here six Judges sat at the hearing, the case was disposed of by a *quorum* of four, and there is not the least probability that a different conclusion or result will be reached if the case be re-argued before a full bench of eight. The motion is, therefore, overruled, and would need no further notice but for the fact that in their reasons in support of it counsel have said, the decision in *\*Maulsby vs. Reifsnider* rendered on the same day is utterly inconsistent with it, and the Court is thus placed in the position of having given two irreconcilable judgments upon the same subject on the same day, *because* "the most subtle and ingenious mind that was ever trained in the law can suggest no sound reason why an attorney should possess a more qualified privilege than a witness." This Court always receives with deference and respect the opinions as well as the arguments, of eminent and learned lawyers of our Maryland Bar, but it is seldom we are favored with one couched in such peremptory and unqualified language as this. One reading it would suppose that it was certain that the privileges of advocates and witnesses had always been regarded as standing upon precisely the same ground, that no distinction ever had been or could be drawn between them, and that no Judge had ever ventured to express or suggest a doubt upon the subject. But this is a mistake.

*Kennedy vs. Hilliard*, 10 *Irish C. L.*, 195, was a case where an unsuccessful attempt was made to sustain an action against a party for a libel contained in an affi-

*\*Ante* page 143.

davit made by him as a witness, and where the Court
had expunged the irrelevant statement from the affi-
davit as prolix, impertinent and scandalous. It was
decided by the Irish Court of Exchequer in 1859. The
opinions delivered by the several Judges seem to be
quite as able and well reasoned as any to be found in
the English decisions on the same subject, and have, in
fact, been specially commended by English Judges.
GREENE, B., in his opinion, after stating the contention
of counsel that the qualification of pertinency or rele-
vancy which is attached to the privilege in case of
words spoken by an advocate in behalf of his client,
applies also to words spoken or written in the course of
a judicial inquiry by a party or a witness, says: "Now
assuming the inquiry as to relevancy to be open and
material, in the case of language used by a counsel, as
in *Brooke vs. Montague* and *Hodgson vs. Scarlett*, I cannot
find any satisfactory authority for the position that it
is so in the case of a party to a proceeding, or a wit-
ness. Considering the foundation of the rule, which
is, that public policy requires that a man shall not be
deterred by the fear of an action from instituting a legal
proceeding, or giving full and free testimony for the
advancement of justice, I do not see how the protection
intended to be afforded to such a person can have its
full and effectual operation, if he is, at his peril, to see
the relevancy and pertinence of his statement. A
counsel being *legis peritus*, and retained for a client,
and being at liberty to exercise his own discretion, may
possibly be differently circumstanced. It may not be
unreasonable to expect from him a greater degree of
circumspection." So again in *Seaman vs. Netherclift*,
decided in 1876, Chief Justice COLERIDGE referred to the
same subject and said: "It is not necessary to discuss
the case of counsel; but it may be observed that their
privilege is at least not greater than that of parties,

and that *it may be less*; for, it has never yet been decided that they would not be subject to an action for words spoken even during the conduct of a case, if the words were irrelevant, *mala fide* and spoken with express malice."

In fact, a careful study of the English cases will show, I think, that while the Courts have with great unanimity held that the privilege should be absolute and unqualified in respect to witnesses and parties, there have been many expressions of opinion by individual Judges, and even some decisions by the Courts, to the effect that there should be a qualification to the privilege of advocates. In regard to them the controversy all along seems to have been whether their privilege should be of the same charcter as that *conceded* to witnesses and parties, and it was not settled until the decision of the Court of Appeal in *Munster vs. Lamb,* decided as recently as 1883, even if that case has settled it.

The great importance to the administration of justice that witnesses should testify with minds absolutely free from the apprehension of being annoyed by civil actions for any thing they may say as witnesses, has already been pointed out. They are commonly untrained in legal learning, and often timid and uneducated. They are brought into Court by the mandate of the law, and compelled to testify, usually for the benefit of others. On the other hand lawyers practice their profession voluntarily and for their own emolument. By their professional training they are taught, and it is their business to know, what is pertinent or relevant to the trial of a case. They are educated and intelligent men, and their position is a most honorable and important one. Their legitimate privileges are very great, and it seems to me, with great deference to the differing opinions of others, not unreasonable that

they should be held civilly responsible to parties injured by an abuse of them. Nor does there seem to be the same strong ground of public policy for protection in their case. At all events it was perfectly competent for this Court, having the questions before them for the first time in these cases, to follow and adopt the current of the American decisions in regard to the privilege of the advocate, and to follow and adopt the rule of the English Courts as regards the privilege of the witness. This is what has been done and it does not seem to me that the privileges of the two are so tied together either by reason or authority as to make these decisions inconsistent and irreconcilable.

*Motion overruled.*

(Decided 17th January, 1889.)