## Anna E. Thompson v. R. J. McCready, Appellant.

*Slander—Judicial proceedings—Repetition of words—Punitive damages -Evidence.*

Testimony honestly given by the defendant at the trial of an action for slander, of circumstances connected with the utterance of the slanderous words tending to mitigation of damages, cannot be urged as a malicious repetition of the slander.

On the trial of an action for slander it appeared that defendant, who was a physician, while attending plaintiff's husband, administered chloroform preparatory to the performance of a critical operation which he considered necessary. Noticing immediately an unfavorable effect on the patient, the attempt was abandoned and efforts made to restore him to consciousness, but these were unavailing, and death resulted. When the alarming symptoms appeared, plaintiff accused the physician of malpractice, and threatened him with an action. Defendant testified that, at a post-mortem examination on the body of the deceased, plaintiff ordered him out of the room, and that, after leaving the room, he called her attention to her testimony at the coroner's inquest the day before, to the effect that her husband was much better the day the chloroform was administered, and asserting that she had told him that her husband was much worse on that day; in substance, charging her with perjury, which was the basis of the action. The verdict of the jury at this trial having been set aside, this testimony was admitted in evidence without objection at the second trial. The court charged that the jury could take this testimony into consideration as a basis for punitive damages. *Held*, to be error.

Argued Oct. 25, 1899. Appeal, No. 77, Oct. T., 1899, by defendant, from judgment of C. P. No. 1, Allegheny Co., June T., 1896, No. 879, on verdict for plaintiff. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL, DEAN, FELL and BROWN, JJ. Reversed.

Trespass for slander. Before STOWE, P. J.

The court charged in part as follows:

[The defendant in this case is charged with having alleged

or said that the plaintiff was guilty of perjury. That is the material allegation on the part of the plaintiff, and that is substantially proved by testimony adduced in the case, and is admitted by the counsel for defendant. He admitted to you that in one particular the case of the plaintiff was substantially made out so far as that allegation was concerned, that is to say, not exactly in the very words, perhaps, of the statement, but substantially that the plaintiff at the coroner's inquest in the courthouse testified to that which was wilfully and maliciously false.] [1] . . . .

[According to the testimony in this case as adduced before you, and according to the admissions of the defendant's counsel in court, the defendant has been guilty of defaming the reputation of the plaintiff, in other words, saying that she committed perjury, when there is no sufficient evidence to indicate that it was true. If he had proved that she had committed perjury it would have been a complete defense, but in the absence of testimony establishing that fact, then it becomes merely a question of damages, so far as this case is concerned. There was no legal excuse for what he said with reference to the plaintiff, and therefore the main and serious question in this case is one of damages.] [2]

[When a charge is made of this character, which is not only a moral offense but a most serious legal offense, the law does not require any direct proof of special or particular damage, it infers legal damages; and it is the duty of the jury in cases of that kind to allow damages such as would naturally and necessarily arise from such a charge as that made against a person. Of course, as has been stated, it cannot be measured by any particular rule of dollars and cents, but the jury, in considering that question, are to take all the facts and circumstances into consideration and consider what would be the ordinary and necessary practical result of such a statement as that, made in the presence of other persons, upon the character, standing in society and the personal feelings of the person thus slandered. Having considered all of those matters you are to give what is called compensation, so far as you can arrive at it, for that particular character of offense.] [3]

But there is another element that may enter into a case of that kind. [In addition to what is called compensation, which

the jury are to consider in the first place simply with reference to the actual damage that may probably have arisen from a charge of this kind, there are damages which the jury ought to impose by way of penalty for a person making statements of the kind alleged here, charging such a serious offense as that inexcusably, and which would have a natural tendency to injure the reputation of other people. Vindictive damages or penalty, as it is called, may be allowed where the evidence indicates that the statement was made maliciously, or, although having been made at one time in the heat of passion and intemperately, to a certain extent excusable, was subsequently repeated under such circumstances as would indicate a determination on the part of the man alleging such a charge as that to maintain it regardless of consequences, and from some vindictive personal motives that he may have had, perhaps feelings engendered by something that occurred before, but which had passed away and at that time ought not to have had any effect upon his conduct.] [4]

In all cases of this kind the circumstances under which the slander has been uttered are to be taken into consideration. . . . If made under circumstances of great provocation it becomes a question of quantity of damages when the case comes into court, and the plaintiff, who had himself provoked the wrong, claims damages for the injury done to him. It is not a legal excuse, as suggested to you by counsel for defendant in this case; the plaintiff under any circumstances is entitled to nominal damages. But in cases of slander, if the verdict is not over $4.66, unless the jury allow costs, the plaintiff gets no more costs than damages. It is an old statute passed 100 years or more ago, and was done simply because of the tendency and disposition of the legislature and of the courts to frown upon unreasonable and improper charges of slander being brought into court where there was no actual or substantial damage shown. . . . [But where the charge is made, even in the heat of passion, and subsequently repeated coolly and deliberately, then the jury have a right to infer that the charge when repeated, however it might have been provoked in the first place, bears the character of malice, and if the jury come to that conclusion, then, after determining the damage necessarily and directly arising from a charge of this kind to the plaintiff, they have a right to add to

that what are called penal damages, damages in addition to the
actual compensation by way of deterring others, as well as the
party interested, from offending in like cases.] [5] . . . . You
will consider whether at the time this was said the circum-
stances were such, and the words spoken by the plaintiff were
such, as would naturally provoke the defendant to make some
retort, would provoke him to claim that they were untrue as is
alleged; that the circumstances gave no excuse for the plain-
tiff's using the language she did, if she did use it as they allege,
charging the defendant with having murdered her husband, or
being the cause of his death. Now, whether she said so or not is
for your determination. If she did say so, under the circum-
stances it certainly would largely tend to produce such a state
of feeling on the part of the defendant as would, to a very great
extent, tend to mitigate the offense of making the charge that
he did. A man doing the best he could and undertaking as a
physician to use the remedies ordinarily required for the curing
of a patient, being charged by anybody, particularly by the wife,
with having caused a death by his own conduct, it is certainly
calculated to provoke one to anger and to a very high degree of
wrath, and while not justification, to some extent it would ex-
cuse, more or less, any remark that a person might make that
would make him liable on a charge of that kind. [But that is
not all of this case. Assuming that the offense should be mit-
igated and looked upon with very considerable leniency from
what occurred at the time they were originally spoken, the jury
have a right to take into consideration what occurred afterwards,
and if it is true, as alleged by the defendant, and as seems to
be shown by the testimony that is before you, that in open court,
a year or more afterwards, he repeated his assertion substan-
tially to the effect that she had done that which he charged her
with doing before the coroner, committed perjury, and had no
witnesses to establish that fact before the jury, it is a circum-
stance from which you may infer that it was not simply words
spoken in the heat of passion, but that they were spoken ma-
liciously. I do not say you should so find, but there are cir-
cumstances from which you may infer that, and if you should
come to that conclusion, then you have a right to add to what
you think proper by way of ordinary and proper compensa-
tion whatever in your judgment would be a proper amount by

way of penalty or punitive damages for a charge then made and subsequently insisted upon under circumstances that were certainly inexcusable.] [6]   Of course, all these facts are for you. The case has been carefully tried and fairly presented, and it is for you to determine under all the circumstances in evidence what your verdict should be.   [As I said, the law infers that which gives the plaintiff a right to compensation, even if spoken in the most intense heat of passion; but if the words were subsequently insisted upon so as to indicate that the defendant was malicious and made these remarks maliciously, and for the purpose of injuring the plaintiff's reputation, then you have a right to go beyond mere compensation and allow whatever would be proper by way of punishment.] [7]

Verdict and judgment for plaintiff for $1,052.  Defendant appealed.

*Errors assigned* were (1–7) above instructions, quoting them.

*J. M. Stoner*, with him *R. T. M. McCready*, for appellant.— The court erred in charging the jury that the plaintiff was entitled to compensatory damages: Neeb v. Hope, 111 Pa. 145; Finnerty v. Tipper, 2 Camp. 72; Bodwell v. Swan, 3 Pick. 376; Schoonover v. Rowe, 7 Blackford, 202; Wallis v. Mease, 3 Binn. 546; Stitzell v. Reynolds, 67 Pa. 54; Letton v. Young, 2 Metc. (Ky.) 558; Taylor v. Moran, 4 Metc. 127.

The court erred in not instructing the jury that the repetition of the charge after suit was brought was admitted only to show the mind and intent of the defendant when he spoke the words which are the cause of action, and that damages ought to be given solely on account of the original utterance: Frazier v. McCloskey, 60 N. Y. 337; Root v. Lowndes, 6 Hill, 518; Shock v. McChesney, 2 Yeates, 473; Wallis v. Mease, 3 Binn. 546; Beardsley v. Bridgman, 17 Iowa, 290.

*Robert T. Reineman*, for appellee, cited Matheis v. Mazet, 164 Pa. 580, Cornelius v. Hambay, 150 Pa. 359, and McAlmont v. McClelland, 14 S. & R. 359.

Opinion by Mr. Justice Dean, December 30, 1899:
The defendant is a reputable physician and surgeon of many

years' practice in Allegheny city.   He had been in attendance
upon one Edward Thompson for about three months before
May 4, 1896; Thompson was afflicted with pleurisy.   On that
day a surgical operation with the purpose of draining the chest
was attempted; McCready was assisted by Dr. Stybr and a medi-
cal student, Boggs; as preparatory to the operation chloroform
was administered; noticing immediately an unfavorable effect,
the attempt was abandoned and efforts made to restore him to
consciousness, but these were unavailing and death resulted.
When the alarming symptoms appeared, the wife, this plaintiff,
was sent for, and when she entered the room she wildly accused
Dr. McCready of causing her husband's death, and declared
that he should be made to pay for it.   The widow, then, with-
out the knowledge of McCready or Stybr, engaged Dr. Matson
to make an examination of her husband's body; he insisted, that
those present at the operation which resulted in death should
also be present at the post-mortem; it was set for 10 o'clock
of the morning of the day of the funeral; there were present
five surgeons, Matson, Ferree, Hartmeyer, McCready and Stybr;
when they were about to commence the examination the plain-
tiff came into the room and said, " You doctors who were not
sent for can go out. "  McCready did go out at the invitation
of plaintiff and urgent request of the other physicians, and
had a conversation with her in the kitchen.   The evidence is
contradictory as to the exact words used by either; both were
excited and, probably both very angry; she in substance ac-
cusing him of malpractice in causing the death of her husband,
and he indignantly denying it.   It appears, that the day before
the post-mortem the coroner had held an inquest at which Mrs.
Thompson testified as a witness, making the statement that the
day the chloroform was administered her husband was much bet-
ter, while the doctor alleged she had told him before the opera-
tion that he was much worse.   The doctor alleged, he called her
attention to these contradictory statements, and in substance
charged her with perjury before the inquest.   For this accusa-
tion Mrs. Thompson brought suit for slander.   The case came
on for trial in April, 1897; McCready took the stand as a wit-
ness in his own defense and gave his version as to what oc-
curred, and under what circumstances the slanderous words
were spoken by him.   There was a verdict for plaintiff, which

was set aside and a new trial granted by the court. At the second trial, the one we are reviewing, counsel for plaintiff offered and read in evidence the notes of the doctor's testimony taken at the first trial, to show a repetition of the charge of perjury in open court. It is in substance the same statement as made at the second trial, to wit: that when they went to the house to administer the anæsthetic she told them her husband was a great deal worse, but when before the coroner she testified under oath that he was a great deal better that day; he said, as appears from the notes in answer to a question by plaintiff's counsel: "I say that it was false because the words she used on the 4th, when we went there, was that he was a great deal worse," and said, "If you persist in making so much fuss about this, and stirring up so much excitement, I will be compelled not only to have you arrested for slander but for perjury as well." It was denied by plaintiff, that defendant spoke these words to her, or that she heard them; she admits that she requested the doctor, who had not been invited, to leave the house. It was not denied by defendant, that he used the language as stated, and that technically they were slanderous; his main defense was, that under the circumstances there was great aggravation, and that he used the language while in passion, therefore damages should be no more than nominal. The court submitted the question of damages to the jury, in an elaborate charge. There was a verdict for plaintiff in the sum of $1,052, and we have this appeal by defendant.

The burden of appellant's complaint in his nine assignments of error is, that in view of the uncontradicted evidence the charge tended to unduly inflame damages, especially in assuming there was ample evidence of such malice as would warrant a verdict for vindictive damages.

We think there was no evidence in this case, and we have carefully read every word of it, which would warrant a jury in finding punitive damages. A surgeon of established reputation attends a patient for three months; in the exercise of his best judgment, a critical operation is attempted which results in death; at once the widow accuses him of malpractice, and in no doubtful language threatens suit for damages; the accusation is kept up in the days following until the trial, for while she does not recollect so saying to others, she admitted at the trial

that she believed defendant by ignorant or reckless treatment caused her husband's death. That she made such declarations to others entirely disinterested, and to use her own language said she "would make him pay for it," is too clear for doubt. Smarting under such an accusation the defendant, sensitive as to his professional character, retorts in the kitchen where he was invited to an interview by her, that she was guilty of perjury before the coroner's inquest. He assumed, as one not a lawyer might assume, that if she had said to him her husband was worse the day of his death, and then testified under oath that he was better, the sworn testimony was false and, therefore, perjury, the conclusion by no means followed; yet this was the doctor's notion of perjury; hence the accusation. But could there be circumstances of greater provocation or probability of anger than those preceding the utterance of the slander? The court itself would not have permitted the verdict to stand, as is apparent from the charge, if this had been the only evidence on the question of malice. But the learned judge was of opinion that the repetition of the words of defendant on the witness stand at the first trial would warrant the jury in finding vindictive damages. He thus instructed the jury: "But that is not all of this case. Assuming that the offense should be mitigated and looked upon with very considerable leniency from what occurred at the time they were originally spoken, the jury have a right to take into consideration what occurred afterwards, and if it is true, as alleged by the defendant and as seems to be shown by the testimony that is before you, that in open court a year or more afterwards he repeated his assertion substantially to the effect that she had done that which he charged her with doing before the coroner, committed perjury, and had no witnesses to establish that fact before the jury, it is a circumstance from which you may infer that it was not simply words spoken in the heat of passion, but that they were spoken maliciously. I do not say you should so find, but there are circumstances from which you may infer that, and if you should come to that conclusion, then you have a right to add what you think proper by way of ordinary and proper compensation, whatever in your judgment would be a proper amount by way of penalty or punitive damages for a charge then made and subsequently insisted upon under circumstances that were certainly inexcusable."

We do not think the testimony of a defendant, such as given by him at a former trial of the same cause, is in any correct view of the law such a repetition of the slanderous charge as aggravates the degree of malice. We do not question the soundness of the rule, that the repetition of a slanderous accusation when its falsity is known to the defendant, is evidence in aggravation of damages; we only question its application to these facts. The defendant had to answer at the first trial, as in this one, a charge of slander; as he did not deny that he was technically guilty of the charge, in his defense, he sought solely to mitigate damages, not by alleging the charge was true, in a repetition of it, but by showing the circumstances under which it was made, and that when he made it, according to his idea of perjury, he believed it true. Notice the dilemma in which defendant was placed; he did not deny he spoke the words substantially as laid; he did not plead justification; he did allege however in mitigation of damages that the circumstances under which they were spoken lessened the degree of malice. If he sat silent the jury might infer the words were a flagrant malicious slander, and assess damages accordingly; if he took the stand and testified to the circumstances attending their utterance, then that was a repetition of the slander which established the highest degree of malice, and should swell the damages. The theory is not sound; testimony honestly *given* in a judicial proceeding, of circumstances connected with the utterance of the slanderous words tending to mitigation of damages, cannot be urged as a malicious repetition of the slander. And this has in substance been so decided. Words used in legal proceedings pertinent to the case in hand are not actionable: 3 Bl. Com. 125. In an affidavit of exculpation the defendant averred his antagonist had sworn falsely. The words were held not actionable. If words spoken in defense in a legal proceeding, although not true, furnish of themselves no original cause of action, how can a merely necessary repetition of them as a defense in a legal proceeding heighten the degree of malice? As is said by TILGHMAN, C. J., in Kean v. McLaughlin, 2 S. & R. 469: "In all judicial proceedings the parties are permitted to speak freely, and if they should even make use of harsh expressions they will not be liable to an action, although the same words spoken on another occasion

would be actionable. But this privilege is not to be abused, nor is a party permitted to utter slanderous words against a witness by way of insult and not in the course of his defense. If the defendant had said he would prove the testimony of plaintiff to be false, he would not have been liable to an action, although he had failed in his evidence."

In the case before us, the defendant first uttered the slanderous words out of court at plaintiff's dwelling; this raised a cause of action in favor of the plaintiff; on the trial of the cause, he sought to show extenuating circumstances in mitigation of damages; the jury were permitted to stamp this defense in a subsequent trial as a repetition of the slander, and swell the damages. It is a harsh rule, not sustained on either reason or authority. It was error to give to the evidence the effect allowed to it in the charge of the learned judge.

Whether the testimony of defendant at the former trial was admissible for any purpose we are not called upon to decide, for there was no objection to it when offered. But the sixth, seventh and eighth assignments, embracing those parts of the charge which permitted the jury to give it the effect of aggravating damages, are sustained. The other assignments are overruled, judgment is reversed and a venire facias de novo awarded.