294 So.2d 59 (1974)
FIREMAN'S FUND INSURANCE COMPANY, a Foreign Corporation, and Howard Keil, Appellants,
v.
Robert F. RILEY, Appellee.
No. 73-1001.
District Court of Appeal of Florida, Third District.
April 9, 1974.
Rehearing Denied May 20, 1974.
*60 Corlett, Merritt & Killian and Robyn Greene, Miami, for appellants.
Dixon, Dixon, Lane & Mitchell, Miami, for appellee.
Before PEARSON, CARROLL and HENDRY, JJ.
PER CURIAM.
The appellee Robert F. Riley filed an action against Fireman's Fund Insurance Company and Howard Keil, an adjustor employed by the insurance company.
The complaint alleged that the plaintiff was involved in an automobile accident on July 27, 1968; that he held a liability insurance policy issued by Fireman's Fund Insurance Company; that the defendant adjustor requested and received a statement from the plaintiff relating to the circumstances of the accident; that said statement was privileged; that thereafter plaintiff filed an action against the City of North Miami, A. Gaudio & Sons, Inc., and Warning Safety Lights, Inc. for his damages resulting from the accident; that the contents of the plaintiff's statement were revealed by defendants to the insurer of A. Gaudio & Sons, Inc.; and that at the trial of that action Keil testified to certain matters appearing in the plaintiff's statement; that thereby the defendants were guilty of libel, and willful and malicious actions done with intent to cause him mental distress.
After answer by the defendants, denying the alleged wrongful conduct and denying the claimed privilege, both sides moved for summary judgment. The court denied the defendant's motion and granted summary judgment in favor of the plaintiff, on liability, *61 and the defendants appealed. We hold the appeal has merit, and reverse.
The evidentiary matter before the trial court revealed the factual background. The accident occurred at approximately 4:00 o'clock A.M. on a certain date, when the automobile Riley was driving struck a barricade in a street, adjacent to certain construction, in the City of North Miami. Riley and his passenger Sandra Leder were injured. Riley was insured by Fireman's Fund Insurance Company. Following assertion of a claim by Leder, Riley's insurer investigated and settled the Leder claim for $10,000, which was the policy limit applicable to her claim. In that investigation the insurer learned Leder's version of the accident was that Riley was drag racing and driving at excessive speed, and that she had "screamed at him" with respect thereto.[1] In the statement obtained by Keil from Riley with reference to the Leder claim, Riley said he was driving approximately 40 to 50 miles per hour. The settlement with Leder was then made.
Later Riley filed an action against the City of North Miami, A. Gaudio & Sons, Inc., and Warning Safety Lights, Inc., claiming damages for his injury and loss, alleging negligent placement of the barricade.
Keil's deposition in the present case disclosed that before trial in the prior action the insurer of the defendant A. Gaudio & Sons, Inc. made a request to the Atlanta office of Fireman's Fund Insurance Company for the latter to co-operate by making its investigation file of the accident available to the former. The request was complied with, and a representative of the Gaudio insurer inspected the file in Fireman's local office. The file contained a resume of Riley's statement, but his statement as recorded was not in the file. Keil testified here that such exchange of investigation files between insurance companies was customary and routine.[2] That was corroborated in the deposition testimony of the representative of the Gaudio insurer who viewed the file.
In that action, in which contributory negligence was an issue, Riley testified he was driving at approximately 30 miles per hour, within the speed limit. The defendants subpoenaed and presented Keil as a witness, and offered evidence to show a conflicting prior statement by Riley to Keil regarding his speed. On behalf of Riley, objection was made to the introduction of such testimony on the ground that his prior statement to the adjustor was privileged. The trial court overruled the objection, and permitted the introduction of the testimony. A verdict was rendered for the defendants. The judgment entered thereon was not appealed.[3]
*62 The witness Keil, by testifying to a prior inconsistent statement of a party did not thereby incur liability as claimed by the plaintiff in this case. 20 Fla.Jur., Libel and Slander § 67. Keil's testimony, relating to the prior statement by Riley as to the speed at which he was driving, held by the court to be admissible, was relevant and material to an issue in the cause. Under those circumstances, even if Keil's testimony had been defamatory of the plaintiff, which clearly it was not, his testimony would not have supplied the plaintiff with a cause of action for libel or slander. Fisher v. Payne, 93 Fla. 1085, 113 So. 378; Robertson v. Industrial Insurance Co., Fla. 1954, 75 So.2d 198; State v. Tillett, Fla.App. 1959, 111 So.2d 716; Buchanan v. Miami Herald Pub. Co., Fla.App. 1968, 206 So.2d 465 (mod. Fla. 230 So.2d 9).
Moreover, a party whose testimony in a case is different from or contrary to a prior statement made by him cannot avoid being impeached through use of his prior inconsistent statement on the ground that the latter is privileged or otherwise is inadmissible as evidence to prove a case or to sustain a pleaded defense. For example, in Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1, where a criminal defendant who testified at his trial had made a statement when questioned earlier by police that differed from his testimony, it was held his prior inconsistent statement could be used for the purpose of impeachment, notwithstanding that because of failure of the police to have warned the defendant as to his rights before taking the prior statement it was not admissible as evidence in the prosecution.
Remaining is the question of whether the action of the defendant insurer, in permitting its file on the investigation of the accident incident to the Leder claim to be inspected by an insurer of a defendant in Riley's action will support the plaintiff's claims of libel and of willful tortious conduct made with intent to cause Riley to suffer humiliation and mental distress. We hold it does not.
Without deciding whether release by the insurer, to another insurer defending a claim arising out of the same accident, of a statement taken from its insured, if such statement was privileged, would constitute an actionable wrong, in the circumstance disclosed such conduct by the insurer did not confer upon the insured a cause of action declared upon here for libel or for the other claimed tort. The subject matter of Riley's statement to the insurer, which it released, was not defamatory. No reasonable basis has been advanced upon which release of such information by the insurer could be classified as having been done with the purpose and intent to cause Riley humiliation or mental distress. On the contrary, the evidence showed absence of such intent, in that the defendants, whether rightly or wrongly in that regard, proceeded on the basis that such action was in accordance with routine business practice. Furthermore, at the time the defendants so released such information they could not have known that later Riley would testify differently, in a material respect.
For the reasons stated, the summary judgment in favor of the plaintiff is reversed, and the cause is remanded to the circuit court with direction to enter summary judgment in favor of the defendants.
Reversed and remanded with direction.
NOTES
[1] In Keil's deposition he stated: "Well, we felt that with the allegations that Mr. Carroll [Leder's attorney] had made in his letters about high speed and drag racing, et cetera, that the answer would lie pretty much with what our insured had to say about what happened."
[2] "A We have always permitted the inspection of files by other companies. It is just basic. That's all. "Q It has always been done, as far as you know, in your connection with Fireman's Fund? "A Yes, sir. We co-operate and expect the same. "Q Nobody with Fireman's Fund has ever told you not to do that, correct? "A This is right. "Q And nobody from Fireman's Fund has ever told you to seek the permission of the insured first before making his file available; correct? "A This is correct."
[3] In view of the ruling by the trial court in the prior action that the questioned testimony was admissible, it is not necessary that we express an opinion as to whether the statement given by Riley to Keil during the insurer's investigation of the passenger's claim as to the speed at which he was driving, was or was not privileged. Cf. Vann v. State, Fla. 1956, 85 So.2d 133, where the court adopted language from 22 A.L.R.2d 659, 660, according privilege to such a communication "`if the policy requires the company to defend him through its attorney, and the communication is intended for the information or assistance of the attorney in so defending him.'" (Italics are by the Supreme Court) A distinction here is that it did not appear the communication was intended for information or assistance of attorneys in defending the passenger's claim. The driver and the insurer recognized the validity of the passenger's claim and did not reach a point of defending against it through counsel.