GEORGE P. KORB *v.* JOSEPH M. KOWALEVIOCZ

[No. 127, September Term, 1978.]

*Decided August 21, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

*Frank Cannizzaro, Jr.,* for appellant.

*John J. Hirsch* for appellee.

COLE, J., delivered the opinion of the Court.

The sole issue presented by this appeal is whether a party-witness' statement, made under oath in open court in response to a question posed to him on cross-examination, that the opposing party was a "crook" is absolutely privileged and thus not actionable for defamation.

The factual posture of this case is relatively simple. On March 28, 1977 George P. Korb Co., Inc. (Korb, Inc.), a home improvement company, of which the appellant, George P. Korb (Korb), is president and sole stockholder, entered into a contract with the appellee, Joseph M. Kowaleviocz, and his

wife to perform certain work on their home in Baltimore. When, at a later date, Korb demanded payment, Kowaleviocz refused, apparently because he believed that Korb, Inc. had failed to perform some of the work and that other work had been done improperly.

Korb, Inc. then instituted suit for the balance allegedly due on the contract on July 28, 1977 in the District Court for Baltimore City. Trial took place on September 20, 1977. After Korb had testified, Kowaleviocz took the stand and presented his defense. Korb, Inc.'s counsel then cross-examined Kowaleviocz:

Q. How old are you sir.
A. 32 years old.
Q. How far did you go in school.
A. Ninth grade.
Q. You can read and write can't you.
A. To a certain extent. I'm no lawyer.
Q. Did you and your wife contact Mr. Korb or did he solicit you.
A. We contacted him. We contacted contractors.
Q. Now, the contract that you signed is very clear in its language. Isn't it, sir? As to what you agreed.
A. If you take, if you was a lawyer it would be very clear.
Q. Well, why did you sign it, sir?
A. Why? Because I thought he was, the main thing was I thought he was honest which I come to find out he isn't. And, I will state here that he is a crook.
Q. I'm glad you're doing it under oath, sir. . . .

Judgment was eventually entered in favor of Korb, Inc. in the amount of $1,330.00, which was the amount sought minus credit for a sink which Kowaleviocz had purchased himself.

Thereafter, on January 18, 1978, based upon the above testimony elicited on cross-examination, Korb filed a suit for slander against Kowaleviocz in the Superior Court for Baltimore City, alleging that Kowaleviocz's statement that Korb was a "crook" had injured Korb personally and had

damaged his business. Kowaleviocz demurred, contending that he had an absolute privilege to make such a statement in response to the particular question posed to him on cross-examination. On August 2, 1978, the Superior Court sustained Kowaleviocz's demurrer without explanation or leave to amend. Korb entered an appeal from that ruling. We agreed to hear the case while it was pending before the Court of Special Appeals, the issue being whether the Superior Court erred in sustaining Kowaleviocz's demurrer to Korb's declaration.

Korb contends that the Superior Court should not have sustained the demurrer. Korb argues that Kowaleviocz's statement that Korb was a "crook" was not relevant to the contract action and thus not absolutely privileged. Korb maintains that the issue in the contract action was non-payment for services rendered by Korb, Inc. and that his integrity has nothing to do with this question.

Kowaleviocz, on the other hand, asks us to affirm the Superior Court's ruling. Kowaleviocz insists that Korb's honesty was relevant because in the contract action he had argued that Korb, Inc. was billing him for materials which were not supplied and for labor which was not performed. Kowaleviocz further contends that his absolute privilege was not limited to testimony concerning the actual parties to the action, but extended to any relevant matter, including the honesty of Korb.

In general, defamatory statements made by a witness while testifying in a judicial proceeding are privileged. *See* 1 F. Harper & F. James, *The Law of Torts,* §§ 5.21, 5.22 (1956); Veeder, *Absolute Immunity in Defamation: Judicial Proceedings,* 9 Colum.L.Rev. 463 (1909); Note, *Developments in the Law — Defamation,* 69 Harv.L.Rev. 875, 917-24 (1956). There are two versions of this privilege, however. The "English rule" affords a witness an unconditional privilege regarding his testimony. The "American rule" also extends such protection to a witness provided, however, that the witness' testimony is relevant or pertinent to a proceeding or is given in response to a proper question by counsel or by the court. The vast majority of jurisdictions in this country follow

the American rule. *E.g., Johnson v. Dover,* 201 Ark. 175, 143 S.W.2d 1112 (1940); *Fireman's Fund Insurance Company v. Riley,* 294 So.2d 59 (Fla. App. 1974); *Veazy v. Blair,* 86 Ga. App. 721, 72 S.E.2d 481 (1952); *Weil v. Lynds,* 105 Kan. 440, 185 P. 51 (1919); *Dunbar v. Greenlaw,* 152 Me. 270, 128 A. 2d 218 (1956); *Laing v. Mitten,* 185 Mass. 233, 70 N. E. 128 (1904); *Pagoto v. Hancock,* 41 Mich. App. 622, 200 N.W.2d 777 (1972); *Greenberg v. Ackerman,* 41 N.J. Super. 146, 124 A. 2d 313 (1956); *Kamen v. Pepsi-Cola Company,* 228 N.Y.S.2d 637 (1962); *Bailey v. McGill,* 247 N.C. 286, 100 S.E.2d 860 (1957); *Thompson v. McCready,* 194 Pa. 32, 45 A. 78 (1899); *Cooley v. Galyon,* 109 Tenn. 1, 70 S. W. 607 (1902); *Viss v. Calligan,* 91 Wash. 673, 158 P. 1012 (1916); *Bussewitz v. Wisconsin Teachers' Ass'n,* 188 Wis. 121, 205 N. W. 808 (1925). *See generally Restatement (Second) of Torts,* § 588 (1977); Annot., 54 A.L.R.2d 1298 (1954); Annot., 81 A.L.R. 1119 (1932); Annot., 12 A.L.R. 1247 (1921); 50 Am.Jur.2d *Libel and Slander* § 249 (1970); 53 C.J.S. *Libel and Slander* § 104(8) (1948). In Maryland, however, the English rule was endorsed in an early case which has not been modified or overruled. *See Hunckel v. Voneiff,* 69 Md. 179, 14 A. 500 (1888), followed in *Schaub v. O'Ferrall,* 116 Md. 131, 81 A. 789 (1911).

In *Hunckel v. Voneiff, supra,* a defamation action was instituted against a former witness on the basis of statements in his testimony. The trial court sustained demurrers to the declaration. On appeal, this Court affirmed. Our predecessors extensively explored the law on privilege of witnesses and adopted the English rule. *Id.* at 193. In denying a motion for reargument of the case, the Court explained that although it had recently agreed to apply a relevance test with regard to the privilege of statements by counsel, *Maulsby v. Reifsnider,* 69 Md. 143, 14 A. 505 (1888), it was distinguishing, on policy grounds, the circumstances under which statements by counsel should be privileged from those when witnesses should be protected:

> The great importance to the administration of justice that witnesses should testify with minds absolutely free from the apprehension of being annoyed by civil actions for any thing they may say

as witnesses, has already been pointed out. They are commonly untrained in legal learning, and often timid and uneducated. They are brought into court by the mandate of the law, and compelled to testify, usually for the benefit of others. On the other hand lawyers practice their profession voluntarily and for their own emolument. By their professional training they are taught, and it is their business to know, what is pertinent or relevant to the trial of a case. They are educated and intelligent men, and their position is a most honorable and important one. Their legitimate privileges are very great, and it seems to me, with great deference to the differing opinions of others, not unreasonable that they should be held civilly responsible to parties injured by an abuse of them. Nor does there seem to be the same strong ground of public policy for protection in their case. At all events it was perfectly competent for this court, having the questions before them for the first time in these cases, to follow and adopt the current of the American decisions in regard to the privilege of the advocate, and to follow and adopt the rule of the English courts as regards the privilege of the witness. This is what has been done and it does not seem to me that the privilege of the two are so tied together either by reason or authority as to make these decisions inconsistent and irreconcilable. [*Hunckel v. Voneiff,* 69 Md. 179, 198-99, 14 A. 500 (1888)].

In *Schaub v. O'Ferrall, supra,* the Court followed the *Hunckel* decision and held that no cause of action could be maintained against a witness for allegedly slanderous testimony.

Since *Schaub* no decision of this Court on the question of absolute privilege has been based on allegedly slanderous statements of a witness.[1] Certain fairly recent opinions,

---

1. The bulk of Maryland privilege cases have involved statements by counsel, *see* Di Blasio v. Kolodner, 233 Md. 512, 197 A. 2d 245 (1964); Kennedy v. Cannon, 229 Md. 92, 182 A. 2d 54 (1962); Kerpelman v. Bricker, 23 Md. App. 628, 329 A. 2d 423 (1974), statements made in pleadings, *see* Bartlett v.

however, contain dicta to the effect that the relevance standard also governs the question of privilege of witnesses in Maryland. *See Di Blasio v. Kolodner,* 233 Md. 512, 197 A. 2d 245 (1964); *Kennedy v. Cannon,* 229 Md. 92, 182 A. 2d 54 (1962). We shall, however, apply the rule of *Hunckel* and *Schaub,* that in Maryland the testimony of a witness in a judicial proceeding is unconditionally privileged.

Kowaleviocz's statement that Korb was a "crook" was made under oath in open court in response to a question posed to him on cross-examination.[2] These facts substantiate his claim of privilege under the English rule and the judgment of the Superior Court sustaining his demurrer without leave to amend.

> *Judgment of the Superior Court of Baltimore City affirmed; costs to be paid by appellant.*

---

Christhilf, 69 Md. 219, 14 A. 518 (1888), or defamatory effects of the institution of legal proceedings, *see* Herring v. Citizens Bank & T. Co., 21 Md. App. 517, 321 A. 2d 182 (1974).

2. Kowaleviocz's statement would also be privileged under the American rule because it was relevant to the subject matter of the proceeding and because it was made in response to a question posed by counsel who cross-examined him. *See Restatement (Second) of Torts* § 588, Comment c (1977). *See also* Todd v. Cox, 20 Ariz. App. 347, 512 P. 2d 1234 (1973); Johnson v. Dover, 201 Ark. 175, 143 S.W.2d 1112 (1940); Oakes v. Walther, 179 La. 365, 154 So. 26 (1934); Hendrix v. Daughtry, 60 S. E. 206 (Ga. 1908); Aborn v. Lipson, 357 Mass. 71, 256 N.E.2d 442 (1970); Greenberg v. Ackerman, 41 N.J. Super. 146, 124 A. 2d 313 (1956); Baggett v. Grady, 154 N.C. 342, 70 S. E. 618 (1911); Calkins v. Sumner, 13 Wis. 193 (1860).