## HOWARD GERSH *v.* LANCE V. AMBROSE

[No. 69, September Term, 1980.]

*Decided September 9, 1981.*

. The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Glenn W. Bell, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellant.

*Barry C. Steel,* with whom was *Glen M. Fallin* on the brief, for appellee.

COLE, J., delivered the opinion of the Court.

In 1978 appellee, Lance V. Ambrose, a staff member of the Baltimore City Community Relations Commission (the "Commission") filed a defamation suit against appellant, Howard Gersh, an Assistant State's Attorney for Baltimore City, alleging that at a public hearing before the Community Relations Commission Gersh had slanderously accused Ambrose of having committed the criminal offenses of obstruction of justice and subornation of perjury. Gersh demurred to an amended declaration on grounds (1) that Ambrose failed to set forth, *haec verba,* the alleged defamatory words, but merely appended a partial transcript of the proceedings giving rise to appellant's case; (2) that Gersh was acting within the scope of his employment as an Assistant State's Attorney and was therefore absolutely immune from suit; and (3) that in any event the communication complained of was absolutely privileged, it being undisputed that Gersh was speaking as a witness at a public hearing and that his statements were made in response to questions asked him at this hearing. The trial court sustained the demurrer without leave to amend on the second and third grounds. A timely appeal followed and the Court of Special Appeals reversed, *Ambrose v. Gersh,* 46 Md. App. 71, 415 A.2d 644 (1980), on the grounds that the two immunities claimed in Gersh's demurrer were not supported by the allegations in Ambrose's declaration. We granted certiorari to consider the immunity questions presented.

Gersh maintains that he is entitled to absolute immunity either as a prosecutor or a witness called to testify at the Commission's hearing. If he is entitled to either, such immunity would completely bar suit. We have never con-

sidered the extent to which a prosecutor may be entitled to absolute immunity outside of a judicial proceeding, nor have we considered the immunity of a witness before a non-judicial body.

The most recent case from the Supreme Court addressing the subject of prosecutorial immunity is *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976). In *Imbler,* the Supreme Court held that immunity extends only to the activities of a prosecutor "in initiating a prosecution and in presenting the State's case," which are those activities "intimately associated with the judicial phase of the criminal process." 424 U.S. at 430. However, *Imbler* specifically declined to consider whether absolute immunity would extend to "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of an advocate," *Id.,* n.33, apparently because of the difficulties of deciding such a question in the abstract. Here, appellant's claim of immunity is similarly abstract. The declaration specifically alleges that Gersh was not acting within the scope of his employment and hence the facts alleged could not support a claim of immunity based upon his activities as Assistant State's Attorney. It is thus unnecessary for us to determine the precise scope of prosecutorial immunity under Maryland law. We hold only that it was error for the trial court to have sustained appellant's demurrer on this ground.

Gersh's second claim of immunity is based upon the undisputed fact that he was testifying as a witness before the Baltimore City Community Relations Commission at the time the allegedly defamatory statements were made. To date, this Court has never addressed the issue of whether a witness testifying in a forum other than a courtroom is absolutely immune from statements made from the witness stand. *Korb v. Kowaleviocz,* 285 Md. 699, 402 A.2d 897 (1979), held only that defamatory statements made by a witness while testifying in a judicial proceeding are unconditionally privileged and therefore not actionable for defamation. In that case we followed the minority English rule:

In general, defamatory statements made by a witness while testifying in a judicial proceeding are privileged. *See* 1 F. Harper & F. James, *The Law of Torts,* §§ 5.21, 5.22 (1956); Veeder, *Absolute Immunity in Defamation: Judicial Proceedings,* 9 Colum. L. Rev. 463 (1909); Note, *Developments in the Law — Defamation,* 69 Harv. L. Rev. 875, 917-24 (1956). There are two versions of this privilege, however. The "English rule" affords a witness an unconditional privilege regarding his testimony. The "American rule" also extends such protection to a witness provided, however, that the witness' testimony is relevant or pertinent to a proceeding or is given in response to a proper question by counsel or by the court. The vast majority of jurisdictions in this country follow the American rule . . . [citations omitted]. In Maryland, however, the English rule was endorsed in an early case which has not been modified or overruled. *See Hunckel v. Voneiff,* 69 Md. 179, 14 A. 500 (1888), followed in *Schaub v. O'Ferrall,* 116 Md. 131, 81 A. 789 (1911). [285 Md. at 701-2].

We quoted approvingly, and at length, from *Hunckel v. Voneiff, supra,* at 198-99, which explained why, in this State, we would grant the unconditional English privilege to a witness while maintaining the conditional, relevance-based American rule with respect to attorneys:

The great importance to the administration of justice that witnesses should testify with minds absolutely free from the apprehension of being annoyed by civil actions for any thing they may say as witnesses, has already been pointed out. They are commonly untrained in legal learning, and often timid and uneducated. They are brought into court by the mandate of the law, and compelled to testify, usually for the benefit of others. On the other hand lawyers practice their profession voluntarily and for their own emolument. By their professional

> training they are taught, and it is their business to know, what is pertinent or relevant to the trial of a case. [285 Md. at 702-3].

We thus made it clear that the purpose of granting an unconditional, absolute privilege was not merely to protect the witness from ultimate liability, but to protect him from the annoyance of suit itself. This is the same reason the privilege granted is absolute, rather than qualified, *i.e.,* defeasible by malice, for all protected participants in the judicial proceeding. *See, e.g., Butz v. Economou,* 438 U.S. 478, 512, 98 S. Ct. 2894, 57 L. Ed. 2d 895 (1978), *on remand* 466 F. Supp. 1351 (S.D.N.Y. 1979), *aff'd mem. sub nom. Economou v. U. S. Dept. of Agriculture,* 633 F.2d 203 (2d Cir. 1980) (absolute immunity is "necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation"); *Blakeslee & Sons v. Carroll,* 64 Conn. 223, 232-33, 29 A. 473 (1894) (to the same effect). *See also* Restatement (Second) of Torts, § 588, comment a (1977); 1 F. Harper & F. James, *The Law of Torts,* § 5.21 (1956). *See generally* V. Veeder, *Absolute Immunity in Defamation: Judicial Proceedings,* 9 Colum. L. Rev. 465 (1909).

Most American courts which have extended absolute immunity to witnesses testifying in other than strictly judicial, in-court settings have first assured themselves that in such settings there are sufficient judicial safeguards so as to minimize the likelihood of harm to potentially defamed (or otherwise injured) individuals who would have no legal remedy. For example, the Supreme Court in *Butz v. Economou, supra,* extended absolute immunity to adjudication before a federal administrative agency because it

> shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages. . . . Moreover, federal administrative law requires that agency adjudication contain many of the same safeguards as are available in the judicial process. The proceedings are adversary in nature.

*See* 5 U.S.C. § 555 (b) (1976 ed.). They are conducted before a trier of fact insulated from political influence. *See* § 554 (d). A party is entitled to present his case by oral or documentary evidence, § 556 (d), and the transcript of testimony and exhibits together with the pleadings constitute the exclusive record for decision. § 556 (e). The parties are entitled to know the findings and conclusions on all of the issues of fact, law, or discretion presented on the record. § 557 (c).

There can be little doubt that the role of the modern federal hearing examiner or administrative law judge within this framework is "functionally comparable" to that of a judge. His powers are often, if not generally, comparable to those of a trial judge: he may issue subpoenas, rule on proffers of evidence, regulate the course of the hearing, and make or recommend decisions. *See* § 556 (c). More importantly, the process of agency adjudication is currently structured so as to assure that the hearing examiner exercises his independent judgment on the evidence before him, free from pressures by the parties or other officials within the agency. [438 U.S. at 513-14].

In short, the protections afforded in an adjudicatory hearing before a federal administrative law judge are such that the immunity available in court trials could safely be extended.

State cases extending absolute immunity to complainants and witnesses before administrative bodies have not, for the most part, required strict adherence to the safeguards outlined in *Butz.* Instead, they have answered in general terms that the immunity would extend to proceedings which are in essence "quasi-judicial," a term which admittedly is of imprecise definition. Each, however, has emphasized the relevance requirements of the American immunity rule it has extended. *E.g., Robertson v. Industrial Insurance Co.,* 75 So. 2d 198, 45 A.L.R.2d 1292 (Fla. 1954); *Clear Water Truck Co. v. M. Bruenger & Co.,* 214 Kan. 139, 519 P.2d 682 (1974);

*Jenson v. Olson,* 273 Minn. 390, 141 N.W.2d 488 (1966); *White v. United Mills Co.,* 240 Mo. App. 443, 208 S.W.2d 803 (1948) (applying Kansas law); *Rainier's Dairies v. Raritan Valley Farms,* 19 N.J. 552, 117 A.2d 889 (1955); *Julien J. Studley, Inc. v. Lefrak,* 50 A.D. 162, 376 N.Y.S.2d 200 (1975), *aff'd on other grounds,* 41 N.Y.2d 881, 393 N.Y.S.2d 980, 362 N.E.2d 611 (1977); *Moore v. West Lawn Memorial Park Inc.,* 266 Ore. 244, 512 P.2d 1344 (1973); *Hartman v. Buerger,* 71 Wis. 2d 393, 238 N.W.2d 505 (1976).

Among the cases which have declined to extend absolute immunity in administrative settings, two types of reasons have emerged. Either the record failed to establish that the involved agency, while possessed of certain judicial or quasi-judicial duties, was engaged in such activities at the time the alleged injury took place,[1] or certain elementary safeguards were simply not present.[2] *See Andrews v. Gardiner,* 224 N.Y. 410, 121 N.E. 341, 2 A.L.R. 1371 (1918) (Cardozo, J.) (following English rule), which held that statements made in an application to the governor for par-

---

1. *E.g.,* Tatro v. Esham, 335 A.2d 623 (Del. Super. 1975) (public meeting of school board); Bienvenu v. Angelle, 254 La. 182, 223 So. 2d 140 (1969) (investigation of Civil Service Commission), *overruled on other grounds,* Gonzales v. Xerox Corp., 320 So. 2d 163 (La. 1975) *on remand* 329 So. 2d 818 (La. App. 1976); J. D. Construction Corp. v. Isaacs, 51 N.J. 263, 239 A.2d 657 (1968).

2. *E.g.,* Hackethal v. Weissbein, 24 Cal. 3d 55, 154 Cal. Rptr. 423, 592 P.2d 1175 (1979) (proceedings before judicial commission of private medical society not an official proceeding authorized by law; no legal requirement that witnesses take an oath therefore no threat of perjury); Blakeslee & Sons v. Carroll, *supra* (investigating committee had no judicial office; and its decisions and subpoenas were unenforceable, the testimony non-compellable); Mills v. Denny, 245 Iowa 584, 63 N.W.2d 222, 40 A.L.R.2d 933 (1954) (city council proceedings not under able and controlling influence of learned judge who may reprimand, fine, punish, and expunge impertinent material from record); Bienvenu v. Angelle, *supra* n.1 (statements to Civil Service investigator not under oath, not subject to sanctions); Mundy v. Hoard, 216 Mich. 478, 185 N.W. 872 (1921) (irrelevant hearsay statements made by voluntary witness before hearing of city police committee not absolutely privileged); Elder v. Holland, 208 Va. 15, 155 S.E.2d 369 (1967) (not all administrative proceedings warrant absolute privilege; superintendent of State police lacked subpoena power; uncertain whether witnesses subject to perjury; no evidentiary rules followed); Engelmohr v. Bache, 66 Wash. 2d 103, 401 P.2d 346, *cert. dismissed,* 383 U.S. 950, 85 S. Ct. 431, 15 L. Ed. 2d 463 (1965) (proceeding before study group appointed by S.E.C. merely investigatory hearing not conducted in manner essential to constitute quasi-judicial administrative proceeding).

don are not absolutely privileged because (1) anyone may make the application, (2) there are no clearly defined issues, (3) the witness' words are not subject to restraints, and (4) "[w]here the test of the pertinent is so vague, there must be some check upon calumny." 224 N.Y. at 447-48. *See generally* Note, *Defamation — Absolute Privilege in Administrative Proceedings,* 97 U. Pa. L. Rev. 877, 880-81 (1949).

The importance of judicial safeguards as a check upon defamation where immunity is extended was recognized in the recent English case of *Trapp v. Mackie,* [1979] 1 All E.R. 489, [1979] 1 W.L.R. 377 (H.L. 1978). In *Trapp* the appellant was the headmaster of a Scottish school who had been dismissed from his post by the local education authority. The appellant thereupon petitioned the Secretary of State for Scotland to set up an inquiry to examine the reasons for dismissal. During the inquiry, the respondent, chairman of the local education authority, testified against the appellant. When the presiding Commissioner ruled that appellant's dismissal was justified, and this decision was accepted by the Minister, the appellant brought an action against the respondent for defamation. In the trial court the respondent's plea of absolute immunity was upheld and appellant's action was dismissed. Appellant appealed to the House of Lords, where Lord Diplok reviewed the question of witness immunity:

> No single touchstone emerges from the cases; but this is not surprising, for the rule of law is one which involves the balancing of conflicting public policies, one general: that the law should provide a remedy to the citizen whose good name and reputation is traduced by malicious falsehoods uttered by another; the other particular: that witnesses before tribunals recognised by law should, in the words of the answer of the judges in *Dawkins v. Lord Rokeby,* 'give their testimony free from any fear of being harassed by an action of an allegation, *whether true or false,* that they acted from malice.'
> So, to decide whether a tribunal acts in a manner similar to courts of justice and thus is of such a kind

> as will attract absolute, as distinct from qualified, privilege for witnesses when they give testimony before it, one must consider first, under what authority the tribunal acts, secondly, the nature of the question into which it is its duty to inquire, thirdly, the procedure adopted by it in carrying out the inquiry and, fourthly, the legal consequences of the conclusion reached by the tribunal as a result of the inquiry. [1 All E.R. at 492].

Although the House of Lords in *Trapp* did not go so far as to set forth a *per·se* rule, absolute immunity was extended to the witness who testified before the Commission because the tribunal was one "recognized by law" and shared many of the attributes which our own courts possess: the hearing was public and adversary in nature; the witnesses were compellable, sworn, and subject to cross-examination; the parties were represented by counsel; a written opinion was submitted for review; and the costs of the proceedings were assessable against the parties. 1 All E.R. at 495. The cumulative effect of the safeguards which attended the proceedings was such that the public interest sought to be advanced by providing the immunity clearly outweighed the harm of subjecting the individual to possible legal injury without remedy.

In the instant case the public interest sought to be advanced is far less compelling than that found in *Trapp.* Moreover, we find nothing in the record before us to indicate the presence of conditioning devices or safeguards which would create the free speaking atmosphere absolute witness immunity is designed to provide and which are present in judicial proceedings. Indeed, nothing in the Ambrose declaration indicates that the Commission hearing was substantially different from an ordinary open public meeting. The public benefit to be derived from testimony at Commission hearings of this type is not sufficiently compelling to outweigh the possible damage to individual reputations to warrant absolute witness immunity.

By our reference to *Trapp,* we do not mean to suggest that witnesses in future administrative proceedings which pos-

sess some or all of the *Trapp* characteristics are entitled to receive absolute witness immunity. The nature and scope of such proceedings are too varied to be circumscribed by specific criteria. Rather, we have decided that whether absolute witness immunity will be extended to any administrative proceeding will have to be decided on a case-by-case basis and will in large part turn on two factors: (1) the nature of the public function of the proceeding and (2) the adequacy of procedural safeguards which will minimize the occurrence of defamatory statements.

We conclude, therefore, that Gersh was not entitled to absolute immunity as a witness before the Baltimore City Human Relations Commission[3] and the trial court erred when it sustained, without leave to amend, the demurrer on this ground.

> *Judgment of the Court of Special Appeals affirmed.*
> *Appellant to pay the costs.*

---

**3.** Note, however, that the conditional "public interest" privilege remains available in Maryland, Jacron Sales Co. v. Sindorf, 276 Md. 580, 600, 350 A.2d 688 (1976). *See* Marchesi v. Franchino, 283 Md. 131, 135, 387 A.2d 1129 (1978); Orrison v. Vance, 262 Md. 285, 277 A.2d 573 (1971). Regarding Maryland defamation law, *see* General Motors v. Piskor, 277 Md. 165, 352 A.2d 810 (1976), *later app.* 281 Md. 627, 381 A.2d 16, 93 A.L.R. 3d 1097 (1977); Jacron Sales Co. v. Sindorf, *supra.*