749 A.2d 197

Christopher A. FLYNN

v.

Glenn REICHARDT, et al.

No. 757, Sept. Term, 1999.

Court of Special Appeals of Maryland.

April 3, 2000.

Richard L. Swick (Robert A. Swick and Swick & Shapiro, P.C., on the brief), Washington, DC, for appellant.

Richard E. Schimel (Budow and Noble, P.C., on the brief), Bethesda, for appellees, Reichardt and Zuercher.

Walter H. Madden, Rockville, for appellees, the Cranes.

Argued before SALMON, SONNER and JOHN J. BISHOP, Jr. (retired, specially assigned), JJ.

SONNER, Judge.

Appellant, Christopher Flynn, a former special education teacher and cross-country coach at Walt Whitman High School, was accused of sexual abuse, sexual harassment, and sex discrimination by appellees—two high school students, Joanna Zuercher ("Joanna") and Claire White–Crane ("Claire"), and their parents, Glenn Reichardt, JoAnn Zuercher, Donald Crane, and Diane White–Crane. One year after the appellees' allegations against him, Flynn sued appellees in

the Circuit Court for Montgomery County for defamation and tortious interference with economic relationship. Feeling "constrained" by the ruling in *Imperial v. Drapeau,* 351 Md. 38, 716 A.2d 244 (1998), and emphasizing "the societal need of clear, efficient, unfettered protection [for] reporting [teacher misconduct]," the lower court dismissed the case on the ground that appellees' statements were absolutely privileged. Appellant raises two issues on appeal:

1.  Did the circuit court err in holding that high school students and their parents who manufacture false allegations of sexual harassment against a coach in order to cause him to be terminated from his job, are shielded from liability by an absolute immunity?

2.  Does the absolute testimonial privilege that shields speakers from liability, "even if their motives were malicious, or knew the statement was false, or their conduct was otherwise unreasonable" apply in a case where their statements are not subject to the charge of perjury?

We have condensed appellant's arguments into the single question of whether the trial court erred in dismissing the case based on the ground that appellees' alleged defamatory statements were absolutely privileged. For the reasons discussed below, we reverse the judgment of the trial court.

Flynn has been a teacher in Montgomery County Public Schools ("MCPS") since 1989 and was a high school track and cross-country coach from 1990 to 1998. Until the time of the appellees' allegations, he was the only coach for Walt Whitman High School's co-ed cross-country team. Appellees, Joanna and Claire, joined the cross-country team as high school freshmen in 1995. During and after the 1997 cross-country season, several girls on the team asked Flynn if he would support their efforts to obtain a separate girls' cross-country coach for the next season. He responded he would, but informed them he had been unsuccessful in his efforts in seeking a girls' coach. Appellant's complaint alleges that appellees were frustrated by failing to obtain a separate girls'

coach and conspired to invent false allegations of sexual abuse, sexual harassment, and sex discrimination in order to get rid of Flynn and to obtain a separate coach for the girls. On January 12, 1998, appellees met with the high school principal, Dr. Jerome Marco, and told him of Flynn's alleged misconduct. Joanna and Claire also wrote to Montgomery County school officials about the alleged misconduct. Flynn was suspended with pay beginning the next day and formally suspended with pay by the Superintendent of Schools on January 15, 1998, while MCPS's Department of Personnel Services conducted an investigation. He remained suspended until May 11, 1998, when he was placed in a non-teaching position.

Flynn's complaint states that "he was cleared by MCPS (and Montgomery County Police) of all sexual abuse, sexual harassment and misconduct charges." However, appellees vigorously dispute this assertion and contend that, on July 8, 1998, after the investigation concluded, the MCPS Superintendent reprimanded Flynn for actions that showed differential and unequal treatment of girls on the cross-country team. The record does not include the letter Joanna and Claire wrote to Montgomery County school officials and does not indicate how the investigation proceeded or was concluded. However, during oral argument, both parties agreed that Flynn received a reprimand.[1]

Flynn has been transferred to a different school and no longer coaches athletic teams. Walt Whitman High School replaced Flynn with two cross-country coaches, one for the boys and one for the girls.

In reviewing the trial court's granting of the motion to dismiss, we must accept as true all well-pleaded facts and

---

1. During oral argument, appellees stated that Flynn was also no longer allowed to be a teacher at Walt Whitman High School, was barred from being a coach, and was required to take gender discrimination education courses. When asked appellant's justification for stating in his brief that Flynn was "cleared of all charges," Flynn's counsel stated that Flynn was not found guilty of sexual abuse, sexual harassment, and sexual misconduct.

allegations made in the complaint. *Faya v. Almaraz*, 329 Md. 435, 443, 620 A.2d 327 (1993). Dismissal is proper only if the facts and allegations, viewed in the light most favorable to the plaintiff, would nonetheless fail to afford the plaintiff relief if proven. *Id.* An appellate court must determine whether the trial court was legally correct by solely examining the sufficiency of the pleading. *Bobo v. State*, 346 Md. 706, 709, 697 A.2d 1371 (1997).

Viewing the allegations in the light most favorable to Flynn, we must accept as true the following allegations set forth in his complaint: that appellees maliciously conspired to invent false sexual misconduct allegations against Flynn in an attempt to obtain a separate coach for the girls' cross-country team; that appellees orally told the school principal, Dr. Jerome Marco, of these knowingly invented falsehoods on January 12, 1998; that Joanna and Claire wrote MCPS officials about the same invented allegations; and that appellees attempted to pressure other female members of the cross-country team to make false allegations of sexual misconduct.

Although the lower court dismissed the case by relying on *Imperial v. Drapeau*, 351 Md. 38, 716 A.2d 244 (1998), the issue of whether absolute immunity bars a defamation claim when a knowingly false complaint is made to a public school system about a public school teacher appears to be one of first impression in Maryland.

In *Imperial*, Dr. Roland Imperial, a physician, called the Bethesda–Chevy Chase Rescue Squad, Inc., a privately funded, non-profit corporation that provides emergency as well as non-emergency transportation services to hospitals, to request non-emergency transport of his patient to Sibley Hospital. *Imperial*, 351 Md. at 40, 716 A.2d 244. Dr. Imperial spoke with the dispatcher on duty, Wayne A. Drapeau, who advised an ambulance crew to transport the patient to Sibley Hospital. *Id.* However, when the ambulance crew arrived at the patient's residence, the two emergency medical technicians (EMTs) found that the patient's blood pressure was 86/60 and that she was unaware of her surroundings. *Id.* at 41, 716 A.2d

244. The crew, without consulting Drapeau, determined that the applicable protocols required them to take the patient to the closest hospital rather than Sibley Hospital. *Id.*

After Dr. Imperial learned his patient had been transported to a different hospital, he wrote a complaint letter and sent it to Maryland Governor Parris N. Glendening and Congresswoman Constance A. Morella. *Id.* The letter stated that Drapeau was incompetent and that his actions in countermanding a physician's explicit orders were unethical and illegal. *Id.* at 42, 716 A.2d 244. The letter concluded with a request for an independent investigation by peer review with no ties to the Rescue Squad. *Id.*

Drapeau sued Dr. Imperial for defamation. *Id.* at 43, 716 A.2d 244. Dr. Imperial moved for summary judgment, which the trial court granted, ruling that the letters were either absolutely or conditionally privileged. *Id.* On appeal, this Court reversed and remanded. *Id.* The Court of Appeals, however, granted *certiorari* and reinstated the granting of summary judgment and, in a four-to-three decision, held that the letters were absolutely privileged. *Id.* at 44, 716 A.2d 244.

The Court of Appeals reviewed the common law rule of absolute privilege in which a person is protected from liability for defamation for testimony given as a witness in a judicial proceeding, and then discussed Maryland's broad view of the privilege, which includes administrative and other quasi-judicial proceedings. *Id.* at 44–45, 716 A.2d 244. The Court of Appeals then discussed the two-prong test set forth in *Gersh v. Ambrose*, 291 Md. 188, 197, 434 A.2d 547 (1981):

Whether statements in an administrative proceeding are within the ambit of the absolute privilege is 'decided on a case-by-case basis and ... in large part turn[s] on two factors: (1) the nature of the public function of the proceeding and (2) the adequacy of procedural safeguards which will minimize the occurrence of defamatory statements.'

*Id.* at 46, 716 A.2d 244. The *Imperial* Court found that the first prong weighed in favor of granting absolute immunity because public policy encourages the communication of infor-

mation to public authorities responsible for maintaining the quality of medical services. *Id.* at 50, 716 A.2d 244. Regarding the second prong, the Court evaluated the procedures involved when there is a complaint about emergency medical service as follows:

... The subject complaint was investigated by MIEMSS [Maryland Institute for Emergency Medical Services Systems], ... an independent state agency....

*Any action, adverse to Drapeau, resulting from the investigation by MIEMSS could not be taken without Drapeau's consent or without complying with the contested cases subtitle of the Maryland Administrative Procedure Act.* Different paths, however, lead to that conclusion [as t]here are various classifications of EMTs....

[If the EMT is classified as an EMT–Cardiac, the Physician Quality Assurance] Board is authorized to reprimand or place on probation an EMT–Cardiac, or suspend or revoke the certification of an EMT–Cardiac, for any [prohibited] conduct.... *Before any disciplinary action can be taken, ... the EMT–Cardiac is entitled to a hearing [at which] the Maryland Administrative Procedure Act applies....* [In addition, t]here are rights of review, first by the Board of Review of the Department of Health and Mental Hygiene, and then by a circuit court.

[If the EMT is classified as an EMT–Paramedic, they] are subject to the same sanctions as are EMTs–Cardiac, and ... enjoy the same procedural safeguards....

[If the EMT is classified as an EMT–A,] MIEMSS also determines whether an EMT–A should be decertified....

The MIEMSS decertification procedure begins with the referral of any complaint that has been received to the local Emergency Medical System Authority. The local authority's investigation 'shall be made confidentially,' although the individual against whom the complaint has been filed 'shall be notified at the investigation stage that the investigation is in process.' The local Emergency Medical System Authority submits findings and a recommendation to the Di-

rector of MIEMSS. *Before the Director of MIEMSS may order any disciplinary action, written notice, stating the issues or charges, must be sent by certified mail to the subject of the complaint and to the local authority at least thirty days before the hearing. Any hearings before the Director of MIEMSS are to be conducted in accordance with the Maryland Administrative Procedure Act.*

*Id.* at 51–53, 716 A.2d 244 (emphasis added). Therefore, the Court of Appeals found that there were procedural safeguards that adequately protected the reputation of a subject of a complaint and held that Imperial was absolutely immune from a defamation suit. *Id.* at 50–51, 716 A.2d 244.

█ In this case, the first prong of the *Gersh* test is clearly met. As the lower court observed, "[T]here is really nothing more important to the core of the well-being of our community, our State and our nation than the public school system." It is unquestionably an issue of strong public interest that students and parents should be protected from suit for reporting a teacher's alleged sexual misconduct.

The more difficult issue in this case is the second prong of the *Gersh* test: are there "adequate procedural safeguards which will minimize the occurrence of defamatory statements"? The difficulty in this question stems from the fact that Flynn did not appeal his suspension and reprimand. It is evident from the record that adequate procedural safeguards are available at the appellate level. For example, according to the Board of Education of Montgomery County Policy BLB, titled "Rules of Procedure in Appeals and Hearings," all parties have the right to be represented by counsel, all testimony must be given under oath, and parties may submit evidence, make objections, cross-examine witnesses, and file exceptions and motions. However, as we shall explain, we find that Flynn did not have the availability of an appeal, and because there were no procedural safeguards during the investigation of his alleged misconduct, appellees' statements are not absolutely privileged. We begin with a review of those

cases in which there was no absolute immunity because of a lack of procedural safeguards.

In *Gersh v. Ambrose*, 291 Md. 188, 196, 434 A.2d 547 (1981), the Court of Appeals held that a witness testifying before the Baltimore City Community Relations Commission was not absolutely immune from a defamation suit because the hearing was merely an "ordinary open public hearing." The Court distinguished an English case decided by the House of Lords, *Trapp v. Mackie*, 1 All E.R. 489 (1979), 1 W.L.R. 377, 1979 WL 67897 (H.L.1978), in which a witness testifying during an administrative hearing regarding a school headmaster's dismissal was absolutely immune from a defamation suit because the tribunal was one recognized by law, the hearing was public and adversary in nature, the witnesses were compellable, sworn, and subject to cross-examination, the parties were represented by counsel, a written opinion was submitted for review, and the costs of the proceedings were assessable against the parties. *Gersh*, 291 Md. at 195–96, 434 A.2d 547.

Similarly, in *McDermott v. Hughley*, 317 Md. 12, 25–26, 561 A.2d 1038 (1989), the Court of Appeals held that a psychologist was not absolutely immune from a defamation suit because it did not appear from the record that an official administrative investigation was even instituted. Moreover, there was no adversary public hearing, no compellable witnesses who were sworn or cross-examined, no reviewable opinion or analysis, and, most important, the plaintiff had no opportunity to present his side of the story. *Id.* at 26, 561 A.2d 1038.

Another instructive case is *Miner v. Novotny*, 304 Md. 164, 498 A.2d 269 (1985), in which the Court of Appeals held that a citizen who files a sworn police brutality complaint is absolutely immune from a defamation suit. The Court found that adequate procedural safeguards that will minimize the occurrence of defamatory statements were present because the officer has the protections of the Law–Enforcement Officers' Bill of Rights in the initial investigation as well as any disciplinary hearing that might result. *Id.* at 174, 498 A.2d 269. In addition, no brutality complaint may be investigated

unless the complaint is duly sworn, a person who knowingly makes a false complaint is subject to criminal liability, the officer under investigation has the right to be represented by counsel during the investigation, and a complete record of the investigation must be kept. *Id.* If disciplinary sanctions are recommended at the conclusion of the investigation, an adjudicatory hearing is held with numerous procedural safeguards. *Id.* at 174–75, 498 A.2d 269.

In the instant case, appellees merely met with the high school principal and wrote to MCPS officials to allege Flynn's misconduct. Their complaint was not duly sworn, there was no adversary public hearing, and there were no sworn witnesses subject to cross-examination. From the record, it does not appear that counsel were present for any portion of the investigation and there does not appear to be a reviewable opinion or analysis of the investigation's findings. Under the procedures and policies currently in place, any student can make an oral and unsworn complaint against a teacher, who will be afforded no protections during the initial investigation and who may not know the identity of the complainant.[2]

Although this situation seems similar to Dr. Imperial's unsworn letters to Governor Glendening and Congresswoman Morella in *Imperial v. Drapeau, supra,* we distinguish that case because, here, Flynn was suspended for four months and reprimanded without any procedural safeguards. In contrast, in *Imperial,* "*Any action, adverse to Drapeau,* resulting from the investigation by MIEMSS could not be taken without Drapeau's consent or without complying with the contested cases subtitle of the Maryland Administrative Procedure Act." *Imperial,* 351 Md. at 51, 716 A.2d 244 (emphasis added). In this case, adverse action had certainly been imposed upon

---

2. The Board of Education of Montgomery County's Policy ACF, titled "Sexual Harassment," amended 1996, states that "[i]n all phases of the complaint resolution process, every reasonable effort shall be made to maintain the confidentiality and protect the privacy of all parties, consistent with MCPS' responsibility to investigate and address such complaints."

Flynn without his consent and without any procedural safeguards.

We decline to accept appellees' view that they are absolutely immune from suit because Flynn could have pursued a grievance or administrative complaint. Procedural safeguards that are available only on appeal *after* adverse action has already been taken fail to minimize the occurrence of defamatory statements, as required by *Gersh*. In fact, having procedural protections available after adverse action has already been taken not only fails to ferret out malicious lies, but is actually less likely to discourage false accusations.

Furthermore, a careful review of the MCPS regulations and policies indicates that Flynn did *not* have the opportunity to appeal or request a hearing.

### *MCPS Regulation GJC–RA*

■ MCPS Regulation GJC–RA, titled "Suspension and Termination of Professional Personnel," revised in 1995, does not provide the right to request a hearing when an employee has been suspended during the investigation of a complaint and subsequently reprimanded.[3] The policy states, in pertinent part:

---

3. We also note that Regulation GJC–RA itself lacks adequate safeguards. There is no adversarial proceeding and the subject of a complaint does not have the opportunity to present his or her side of the story. As appellees state in their brief:

The procedure set forth [in MCPS Regulation GJC–RA] *involves a series of communications and actions,* in the following sequence: (1) a responsible administrator ... confers with the supervising MCPS administrator; (2) the responsible administrator reports immediately to the associate superintendent for personnel services; (3) when possible, the responsible administrator submits signed statements from persons with knowledge of the alleged conduct of the MCPS employee ...; (4) the responsible administrator develops 'an anecdotal record of all observations, conferences, or incidents pertinent to the allegation'; (5) in case of an emergency, the employee may be removed from his work assignment and be placed on paid leave for a period not to exceed one duty day, with written notification of the removal including reason(s) for that action to the associate superintendent for personnel services; (6) the associate superintendent for personnel services reviews the information submitted; (7) the appro-

D.   Superintendent of Schools

1.  When the investigation is completed and the report of the findings submitted to the superintendent by the associate superintendent for personnel services, the superintendent will notify the employee, in writing, of one of the following:

a)  The allegation has been withdrawn

b)  A reprimand of the employee

c)  **The employee is charged with immorality, misconduct in office, insubordination, incompetency, or willful neglect of duty**

(1)  A recommendation will be sent to the Board of Education that the employee's services be suspended or terminated

(2)  **If requested within ten calendar (10) days, the employee is entitled to a hearing before the Board of Education**

d)  Other appropriate action as determined by the superintendent

2.  **When the employee requests a hearing before the Board of Education (see Item D.1.c. above)**, the request is honored, and the date set for the hearing

priate associate superintendent provides counsel and advice to the responsible administrator and submits to the associate superintendent for personnel services all available written reports pertaining to the employee and the allegations against him; (8) at the direction of the Superintendent of Schools, the associate superintendent for personnel services conducts an investigation of the allegations and consults with appropriate personnel; (9) the associate superintendent for personnel services reviews the information submitted, and provides the Superintendent of Schools ... with a written report of findings and recommendations, which, in all possible instances, 'is supported by signed statements from persons who have a knowledge of the employee, or the alleged conduct ...'; and (10) upon reviewing the written report of findings and recommendations, the Superintendent of Schools notifies the employee, in writing, of the outcome of the investigation (withdrawal of allegations, reprimand, charge with a § 6–202(a)(1) offense, or other appropriate action).

must permit the employee to have not less than ten calendar (10) days' notice in writing.

3. If the employee does not request a hearing before the Board of Education, the superintendent's recommendation that the employee's services be suspended or terminated is submitted to the Board.

E. Board of Education

1. **When the employee requests a hearing before the Board, the procedures outlined in Policy BLB:** *Rules of Procedure in Appeals and Hearings* **are implemented....**

(Emphasis added).

Thus, the plain language of Regulation GJC–RA does *not* provide the right to appeal or request a hearing when a teacher has been suspended during the investigation and subsequently reprimanded, as was Flynn. Instead, an employee may request a hearing before the Board of Education only when "charged with immorality, misconduct in office, insubordination, incompetency, or willful neglect of duty." Although appellees maintained during oral argument that Flynn could have appealed as soon as he was "charged" with sexual misconduct, the regulation does not define the word "charge." Looking at the context of the regulation, it is clear that when an employee is "charged" with misconduct in office, it is a *disposition* of allegations *after* the investigation is completed. Therefore, we do not read the word "charged" to mean simply "alleged." Reading the regulation as a whole, Flynn could not have sought an appeal or hearing simply when the students made an allegation of sexual misconduct. We note that the five "charges" of immorality, misconduct in office, insubordination, incompetency, or willful neglect of duty, correspond exactly with the Maryland Code, Education § 6–202(a), which sets forth the grounds for suspending or dismissing teachers, principals, and other professional personnel. MD.CODE (1999 Repl. Vol.), EDUC. § 6–202(a). A mere allegation of misconduct in office is not grounds for suspension

or dismissal. *Id.* Therefore, Flynn had no opportunity to request a hearing under Regulation GJC–RA.

### Board of Education of Montgomery County Policy BLB

Similarly, the Board of Education of Montgomery County's Policy BLB, titled "Rules of Procedure in Appeals and Hearings," is inapplicable to Flynn's case because he could not request a hearing before the Board. In fact, policy BLB explicitly states that it is applicable only to proceedings arising under Maryland Code, Education Article, §§ 6–202(a), 6–203(c), 7–304(c), and 4–205(c); those sections are not applicable to Flynn.[4]

### Maryland Annotated Code's Education Article § 4–205(c)

Appellees also argue that an employee has a right to request a hearing if dissatisfied with *any* action by the Superintendent pursuant to the Maryland Code's Education Article § 4–205(c). We disagree. Section 4–205(c) states, in pertinent part:

---

4.  The Board of Education of Montgomery County Policy BLB states, in pertinent part:

    1. Applicability

    a) These rules govern appeals and hearings within the quasi-judicial responsibilities of the Board of Education. They are not applicable to proceedings involving the Board's exercise of its legislative or policy-making function.

    b) Proceedings covered by these rules arise under the Education Article, Sections 6–202(a), 6–203(c), 7–304(c), and 4–205(c) and local board proceedings permitted under the Education Article.

    c) (1) Hearings under Section 6–202(a) are on recommendations of the superintendent to suspend or dismiss professional and/or certified personnel. . . .

    (2) Appeal hearings under Section 7–304(c) are from a finding by the superintendent that suspension of a student for more than 10 days or expulsion of a student is warranted.

    (3) Proceedings under Section 4–205(c) are on appeals from decisions of the superintendent on controversies and disputes involving the rules and regulations of the Board or the proper administration of the county public school system.

    (4) Hearings under Section 6–203 are those under Sections 4–205(c) and 6–202 which are referred by the Board for an initial hearing by a hearing examiner.

(c) *Interpretation of law; controversies and disputes.*—

(1) Subject to the authority of the State Board under § 2–205(e) of this article, each county superintendent shall explain the true intent and meaning of:

(i) The school law; and

(ii) The applicable bylaws of the State Board.

(2) Subject to the provisions of § 6–203 and Subtitle 4 of Title 6 of this article and without charge to the parties concerned, each county superintendent shall decide all controversies and disputes that involve:

(i) The rules and regulations of the county board; and

(ii) The proper administration of the county public school system.

(3) A decision of a county superintendent may be appealed to the county board if taken in writing within 30 days after the decision of the county superintendent. The decision may be further appealed to the State Board if taken in writing within 30 days after the decision of the county board.

MD.CODE (1999 Repl.Vol.), EDUC. § 4–205(c). Contrary to appellees' assertion, § 4–205(c) does not provide a right to appeal *any* decision by a county superintendent, but rather, only those decisions that explain the true intent and meaning of the school law and the applicable bylaws of the State Board, as well as decisions involving the rules and regulations of the county board and the proper administration of the county public school system. A superintendent's decision to suspend a teacher during the investigation of a complaint and subsequent decision to reprimand is not provided an appeal pursuant to this section of the Maryland Code. Rather, these actions by a superintendent are addressed in § 4–204(b), which describes a superintendent's general duties as carrying out the rules, regulations, and policies of the county board. *Id.* at § 4–204(b). Therefore, a superintendent must carry out Montgomery County Public School Regulation GJC–RA. As discussed above, Regulation GJC–RA's plain language does

*not* provide the right of appeal when a teacher has been suspended during the investigation and subsequently reprimanded.

In sum, we hold that, in this limited circumstance, there was a lack of adequate procedural safeguards to minimize the occurrence of defamatory statements. Procedural safeguards were unavailable during Flynn's investigation and, under MCPS Regulation GJC–RA, an appeal was also unavailable. In contrast to *Imperial*, in which any adverse action could not be taken against Drapeau without either his consent or without complying with the Administrative Procedure Act, in this case, adverse actions were taken against Flynn without his consent and without adequate procedural safeguards. Accordingly, appellees' statements were not absolutely privileged and the judgment of the lower court is reversed.

**JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY APPELLEES.**