**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 08-1674**

───────────────

M. LOUIS OFFEN, M.D.,

        Plaintiff - Appellant,

     v.

ALAN I. BRENNER, M.D.,

        Defendant - Appellee.

───────────────

Appeal from the United States District Court for the District of Maryland, at Greenbelt.   Roger  W.  Titus, District Judge. (8:05-cv-01606-RWT)

───────────────

Argued:  March 26, 2009          Decided:  June 9, 2009

───────────────

Before NIEMEYER and MICHAEL, Circuit Judges, and Eugene E. SILER, Jr., Senior Circuit Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

───────────────

Affirmed by unpublished per curiam opinion.

───────────────

**ARGUED:** Edward Mark Buxbaum, WHITEFORD, TAYLOR & PRESTON, LLP, Baltimore, Maryland, for Appellant.  Tarra R. DeShields-Minnis, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.  **ON BRIEF:** Emily A. Daneker, WHITEFORD, TAYLOR & PRESTON, LLP, Baltimore, Maryland, for Appellant.  Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, for Appellee.

───────────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

M. Louis Offen, M.D., sued Alan I. Brenner, M.D., alleging defamation under Maryland law. Brenner had written a letter to Offen's supervisor accusing Offen, a federal employee, of various acts of insubordination, and Offen was disciplined following an administrative proceeding. The district court granted Brenner's motion to dismiss under Rule 12(b)(6), concluding that Brenner was entitled to an absolute privilege under Maryland defamation law. In Offen's first appeal, after receiving the Court of Appeals of Maryland's answer to a certified question, we vacated the dismissal. On remand the district court took into account the Maryland court's decision on the certified question, and again dismissed Offen's complaint. This time, we affirm.

I.

Offen is a neurologist employed by the U.S. Department of Health and Human Services (DHHS) in the Division of Vaccine Injury Compensation (DVIC). Offen reviews claims filed against the DHHS by persons seeking compensation for alleged vaccine-related injury. Offen evaluates the merits of a claim and transmits his conclusions to the Department of Justice (DOJ) lawyer assigned to represent DHHS on the claim.

In 2004 Offen and a retained outside consultant reviewed a certain Hepatitis B vaccine injury claim and reported their conclusions to the assigned DOJ lawyer. The DOJ lawyer thereafter contacted Offen's supervisor, Vito Caserta, M.D., for further assistance "regarding the DOJ's determination [as to] how to proceed with respect to the [claim]." J.A. 8. Caserta, in turn, discussed the claim in a conference call with two other physicians, the defendant, Brenner, a rheumatologist who is an outside consultant for DVIC, and Arnold Gale, M.D. In May 2004 Offen contacted Brenner and offered to provide him with records that were relevant to the claim. Brenner accepted the offer, and Offen sent him the records.

Later, on July 30, 2004, Brenner sent a letter to Offen's supervisor, Caserta, which contained the following passages:

> In the past several months I have had a number of telephone calls and E mail communications from Dr. Offen, each requesting my private opinion on DVIC cases not officially assigned to me for consultation. . . .
>
> The first of this latter type of call was regarding the makeup of our Civilian Expert Immunization Committee (CEIC). The substance of that call was to question me about the process of selection of committee members. I felt that the tone of the questioning was accusatory and, in my opinion, defamatory and degrading to DVIC. . . .
>
> You will recall that, several months ago, you arranged a telephone conference in which you, Dr. Arnold Gale

3

and I participated.   The purpose of that conference was to discuss the [Hepatitis B claim]. . . .

About 2 months ago Dr. Offen called me, stating that the case had not been presented in its entirety and that you had misrepresented the facts to induce Dr. Gale and me. . . . My recollection of the call was that Dr. Offen accused you of twisting the facts and of leaving out pertinent information to suit some personal purpose and that he wanted to send me the case record suggesting that my review of the documents would prove that our conclusion was in error. . . .

I have been very disturbed by the tone of Dr. Offen's accusations and the way in which he has seemed to try to enlist my support in some sort of personal vendetta against DVIC in general and several members of the office in particular.   Indeed I believe that Dr. Offen has had something derogatory to say about each and every medical officer involved.   Dr. Offen has also made it quite clear that he has no respect for the leadership of DVIC.   He positively gloated over Thom Balbier's transfer, telling me that Thom had been removed for incompetence and stating that you would be the next to go.

J.A. 8-9.

This letter prompted Caserta to initiate formal DHHS disciplinary proceedings against Offen.   At the conclusion, Offen was suspended for five days without pay and stripped of some of his responsibilities.   The administrative proceedings against Offen were conducted according to the procedures set forth in the agency's regulations, and he does not contend that the procedural safeguards were inadequate.

Offen sued Brenner for defamation in the United States District Court for the District of Maryland, invoking diversity jurisdiction under 28 U.S.C. § 1332.   Brenner filed a motion to

4

dismiss, claiming that his statements in the letter were protected by an absolute testimonial privilege. Maryland defamation law recognizes an absolute privilege for witnesses in judicial proceedings and extends that privilege to witnesses in administrative proceedings in certain circumstances. Gersh v. Ambrose, 434 A.2d 547, 548-49, 551-52 (Md. 1981). Whether the privilege is available in an administrative proceeding turns on two factors: "(1) the nature of the public function of the proceeding and (2) the adequacy of procedural safeguards which will minimize the occurrence of defamatory statements." Id. at 551-52. Offen argued that his antagonist, Brenner, was not entitled to an absolute privilege because the first Gersh factor -- the public interest -- was not sufficiently implicated. According to Offen, the public interest factor is not satisfied where the targeted employee has limited duties and authority. The district court, however, refused to consider Offen's duties and authority. The court instead focused on the importance of DHHS's disciplinary proceedings, concluding that they were important to an orderly public health system. This conclusion led the district court to hold that Brenner had an absolute privilege, which resulted in the dismissal of Offen's complaint.

On appeal we certified a question to the Court of Appeals of Maryland. See Md. Code Ann., Cts. & Jud. Proc. §§ 12-601 – 12-609. We asked:

5

> [I]n deciding whether a statement that led to an administrative proceeding against a public employee is protected by absolute privilege, should the duties and authority of the employee against whom the statement was made be considered in determining, "the nature of the public function of the proceeding"?

The Court of Appeals of Maryland engaged in a thorough discussion of relevant Maryland case law and concluded that "the duties and authority of the employee are a useful factor, but should not be determinative, in considering the nature of the public function of the administrative proceeding." Offen v. Brenner, 935 A.2d 719, 721 (Md. 2007). After receiving Maryland's answer, we vacated the judgment of the district court and remanded the case for further consideration in light of the answer. On remand the district court considered the scope of Offen's duties and authority, but nevertheless concluded once again that Brenner was entitled to an absolute privilege. The court therefore granted, for the second time, Brenner's motion to dismiss. Offen appeals that decision, which we review de novo, Hatfill v. N.Y. Times Co., 416 F.3d 320, 329 (4th Cir. 2005).

## II.

Under Maryland defamation law certain communications are protected by an absolute privilege. A speaker protected by an absolute privilege is immune from liability regardless of his purpose or motive. Miner v. Novotny, 498 A.2d 269, 270 (Md.

6

1985).  A witness testifying in a judicial proceeding has long been entitled to such a privilege, and, more recently, the privilege has been extended to statements made in certain administrative proceedings.  Gersh, 434 A.2d at 551-52.  Moreover, the privilege may cover statements made in advance of judicial and administrative proceedings.  See Miner, 498 A.2d at 275.

Again, whether absolute witness immunity extends to an administrative proceeding depends on two factors:  "(1) the nature of the public function of the proceeding and (2) the adequacy of procedural safeguards which will minimize the occurrence of defamatory statements."  Gersh, 434 A.2d at 552.  Maryland courts regard the second factor as a threshold requirement: adequate procedural safeguards must be in place in the administrative proceeding.  See Offen, 935 A.2d at 725 (noting that immunity can be extended to cover only those proceedings with procedural protections "functionally comparable to judicial processes"); McDermott v. Hughley, 561 A.2d 1038, 1045 (Md. 1989) (declining to extend privilege because of absence of procedural safeguards in the proceeding).  Offen has conceded the adequacy of the procedural safeguards that accompanied his disciplinary hearing.

The existence of adequate procedural safeguards is not alone sufficient, however.  Offen, 935 A.2d at 725, 728.  "[T]he

7

nature of the public function of the proceeding [must] act[] to protect a socially important interest." Id. at 729. Moreover, the public interest must outweigh the potential harm to the plaintiff's reputation. Id. at 726.

In answering our certified question, the Court of Appeals of Maryland distinguished ongoing administrative proceedings from those not yet initiated.[*] Id. at 728-29. Prior to a proceeding, Maryland has recognized a "socially important interest in allowing for the protestation and reporting of alleged abuses of the public trust as a result of official conduct." Id. at 729. The Court of Appeals of Maryland has held, for example, that citizen complaints alleging police brutality, incompetence in emergency medical care, and sexual misconduct by a teacher implicate important societal interests. Miner, 498 A.2d at 275 (police brutality); Imperial v. Drapeau, 716 A.2d 244, 250-51 (Md. 1998) (emergency medical care quality); Reichardt v. Flynn, 823 A.2d 566, 573, 575 (Md. 2003) (sexual misconduct by a teacher). In each of those cases, the court concluded that "[t]he importance of not deterring citizen

---

[*] In the context of ongoing judicial and administrative proceedings, there is an interest in ensuring that "witnesses should go upon the stand with their minds absolutely free from apprehension that they may subject themselves to an action of slander." Id. at 729. (quoting Hunckel v. Voneiff, 14 A. 500, 501 (Md. 1888).

8

complaints outweighed the possible harm of defamatory statements," Offen, 935 A.2d at 729, and extended an absolute privilege to the complaints, id. at 730.

In answering our certified question, the Maryland Court of Appeals made clear that the duties and authority of the targeted individual are relevant to the weight to be given to the public interest factor. Offen, 935 A.2d at 730. According to the Court, the inquiry into "the nature of the public function of the proceeding" is meant to shed light on

> the proceeding's effect on the public and its impact on a socially important interest. It therefore may be necessary in some cases to examine the public authority or duties entrusted in the employee. The duties and authority attendant to a particular position may determine how much influence an official has over the public from his or her position, which in turn can affect how closely the proceeding serves a public interest. From our jurisprudence, it follows that the "nature of the public function of the proceeding" therefore also includes an inquiry into a person's power over the public when the identified public interest is an important check on that power.

Id. The touchstone of the analysis, which takes into account limitations on a public employee's authority and duties, is the strength of the public interest in preventing the alleged abuses.

Brenner's letter to Caserta asserts that Offen was carrying out a personal vendetta against DVIC and undermining its officers. The letter accuses Offen of telling Brenner that Caserta had "misrepresented the facts," "twist[ed] the facts,"

9

and "le[ft] out pertinent information" in presenting information used by Brenner to reach a recommendation on a Hepatitis B claim. Fairly read, the Brenner letter accuses Offen of trying to convince Brenner to change his substantive conclusions and recommendations on that claim. The letter further suggests that Offen was circumventing DVIC's established process for reviewing claims. Brenner's accusations call into question Offen's own credibility and impartiality in reviewing claims and implicate the overall integrity of DVIC's review process. The integrity of vaccine claims administration affects the availability and amount of compensation provided to individuals with vaccine-related injuries and otherwise implicates national public health policy. There is an important social interest in ensuring that DVIC employees render impartial, objective, and fair evaluation of claims.

Offen argues that his duties and authority were so limited that his actions could not jeopardize the integrity of DVIC's review process. The parties agree that DVIC recommendations, including recommendations made by Offen, do not dictate the government's position on vaccine injury claims; the assigned DOJ lawyer is ultimately responsible for that position. But in practice the government's position depends on DVIC's medical expertise. Offen's complaint itself illustrates the important role that DVIC employees, like Offen, play in

10

formulating the government's position.  After reviewing Offen's conclusions, the DOJ lawyer assigned to the Hepatitis B claim at issue sought the advice of Offen's supervisor, who in turn consulted with Brenner.  Thereafter, Offen allegedly went outside the proper chain of command to influence Brenner.  Even taking into account the limitations on Offen's authority, the allegations made against him raise significant public concerns relating to the integrity of DVIC evaluations of vaccine-related claims.

We conclude that the possible harm a false complaint may cause to an individual DVIC employee's reputation, notwithstanding the procedural safeguards provided, is outweighed by the public's interest in encouraging the filing and investigation of citizen complaints implicating the integrity of the vaccine claims administration process. Further, Offen's disciplinary hearing advanced the public's interest in protecting the integrity of that process.  See Offen, 935 A.2d at 729-30.  The judgment of the district court dismissing Offen's complaint is therefore

AFFIRMED.